Argued May 4, decided June 29, 1909,

## RUSSELL v. OREGON R. & N. CO.

[102 Pac. 619.]

RAILROADS—OPERATION OF TRAINS—CARE REQUIRED.

1. A railroad must use all reasonable precautions to protect the traveling public from injury from the operation of its trains, and such precautions must be reasonably commensurate with the danger; the duty varying with the circumstances of each particular case.

RAILROADS—OPERATION OF TRAINS—CARE REQUIRED.

2. Whether a railroad was negligent in failing to provide a flagman or automatic signals at a crossing, *held* under the evidence for the jury.

RAILROADS—OPERATION OF TRAINS—CARE REQUIRED.

3. Where the undisputed evidence shows extraordinary dangers to the traveling public on a railroad crossing, it is not error to submit to the jury the question whether reasonable care demands that a watchman, or other method of warning than the use of the bell or whistle, should be adopted.

RAILROADS—ACCIDENT AT CROSSING—PROXIMATE CAUSE.

4. A freight train, equipped with air brakes, and managed entirely from the engine, was half an hour late in reaching a highway crossing. The absence of a brakeman delayed the train, but there was nothing to show that the train was run at any different speed, or managed in any different way, than it would have been had the brakeman been at his post, *Held*, that the absence of the brakeman was not the proximate cause of an accident occurring at the highway crossing in collision with a traveler.

RAILROADS—CROSSING ACCIDENT—MISLEADING INSTRUCTIONS.

5. Where, in an action for the death of a traveler struck by a train at a railway crossing, the complaint alleged a negligent failure to have a full crew of train hands, but the evidence failed to support the allegation, an instruction, making it the duty of a railroad to man its trains with a sufficient crew, was misleading, because it could only refer to the want of a brakeman, established by the evidence.

NEGLIGENCE—NEGLIGENT ACT—LIABILITY.

6. One is liable for any act, the injurious consequences of which an ordinarily prudent man would be likely to see and guard against.

RAILROADS—NEGLIGENCE—OPERATION.

7. Negligence cannot be predicated on the mere fact that a freight train is behind time, and it matters not from what particular cause the delay arose.

RAILROADS—OPERATION OF TRAINS—NEGLIGENCE.

8. No rate of speed of trains is negligence *per se*, but circumstances may require a diminished speed, and it is only the force of such circumstances which creates such a duty.

RAILROADS—OPERATION OF TRAINS—NEGLIGENCE.

9. In an action for the death of a traveler struck by a train at a crossing, evidence *held* to require submission to the jury of the issue of negligence in operating the train at a dangerous speed.

RAILROADS—CROSSING ACCIDENT—MISLEADING INSTRUCTIONS.

10. In an action for death of a traveler, struck by a train at a railroad crossing, defendant requested the following instruction: "The convenience of the public and commercial industry demand the conveyance of passengers and freight at a greater speed than can be accomplished by ordinary conveyance; that the railroad company cannot be required to slow down its trains, or run at such rate of speed across country crossings, or those in small villages, as will preclude the possibility of accident. Such requirements would be incompatible with rapid transit required of such companies. No rate of speed across a country crossing, or one in a small village, is of itself negligence; and, if you find from the evidence that the rate of speed at which said train was being operated, was consistent with the obligation resting on the company, then and in that event you cannot find defendant guilty of negligence on account of the rate of speed at which said train was being operated." *Held*, that the instruction was properly refused, because not stated in language sufficiently simple to enable the average juror to comprehend it.

TRIAL—INSTRUCTIONS—FORM OF INSTRUCTIONS.

11. Unless an instruction is so definite as to enable one of average intelligence to understand it, it ought to be refused as misleading, and a court ought

54. OR.—— 5

not to give an instruction which, though stating the law correctly, is not couched in language sufficiently untechnical to be comprehended by the average juror.

TRIAL—SPECIAL INTERROGATORIES—GENERAL VERDICT.

12. Where the jury fails to agree on an answer to an interrogatory, and returns a general verdict, the effect of the failure to agree is to eliminate from the case the matter embraced in the interrogatory, at least so far as it is sought to make it a substantive ground for recovery.

TRIAL—SPECIAL INTERROGATORIES—GENERAL VERDICT.

13. Where several grounds of recovery are alleged, and an interrogatory submitted to the jury goes only to one of them, the general verdict returned by the jury will stand, notwithstanding their failure to agree on an answer to the interrogatory, as it will be presumed that the jury based their verdict on some other ground.

TRIAL—SPECIAL INTERROGATORIES—GENERAL VERDICT.

14. Where the court decides to submit a special finding, it should hesitate to allow the jury to return its general verdict and ignore the finding, for it creates a doubt as to whether the jury agreed on the ground of recovery, and a good verdict must be based on a ground on which all the jurors agree.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

15. An infant is, as a general rule, only required to exercise that care in avoiding injury that the evidence shows him to be capable of.

NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.

16. A boy 13 years old, bright and intelligent, does not, as a matter of law, possess the judgment and discretion of an adult, and the question of his exercising proper care in avoiding injury is for the jury.

APPEAL AND ERROR—BILL OF EXCEPTIONS—CONCLUSIVENESS.

17. The court on appeal is bound by the bill of exceptions, and cannot look outside of that to ascertain what took place.

RAILROADS—ACCIDENTS AT CROSSINGS—NEGLIGENCE—INSTRUCTIONS.

18. Where, in an action for the death of a traveler struck by a train at a crossing, the complaint alleged negligence in failing to have a full train crew, and not reducing the speed of the train when approaching the crossing, in not sounding the whistle and ringing the bell, and in not maintaining a watchman or automatic whistle to warn travelers, and the evidence wholly failed to establish negligence in failing to have a full train crew, an instruction that plaintiff need not prove that the railroad company was negligent in all of the particulars alleged, but only that it was negligent in some of them, was erroneous, because it impliedly submitted to the jury the alleged failure to have a full train crew.

EVIDENCE—NEGATIVE AND POSITIVE EVIDENCE.

19. The comparative value of positive and negative testimony depends on the means of knowledge of the witnesses,.their opportunity to know the facts and their apparent candor and demeanor on the witness stand.

TRIAL—INSTRUCTIONS—WEIGHT OF EVIDENCE.

20. Under the statute providing that the jury are the sole judges of the value and effect of evidence, an instruction that the testimony of a witness that a thing actually occurred, is of more value than the testimony of a witness who says he did not see or hear the occurrence, is an invasion of the province of the jury.

From Union: THOMAS H. CRAWFORD, Judge.

Statement by MR. JUSTICE McBRIDE.

This is an action by J. A. Russell, administrator of the estate of J. Donald Russell, deceased, to recover damages on account of the death of the said J. Donald Russell, who was struck and killed by a railway locomotive on defendant's road at Perry, in Union County, on July 30, 1907.

The complaint alleges that the deceased was about thirteen years old, healthful, of good habits, and intelligent; that defendant's railway track crosses the public highway, practically on a line therewith, at the village of Perry, a town of about 300 inhabitants; that the crossing is near a point in the Grande Ronde River where a high dam is constructed, over which the waters fall, making a loud noise; that the ground formation in the vicinity is that of a mountain canyon, and that all sounds of bells, whistles, and other signals of the defendant's trains coming from the west are so reverberated and re-echoed in the vicinity of the crossing as to deceive and confuse travelers approaching the same, and to make it appear to them that the cars and engines, actually coming from the west, are approaching the crossing from the east; that defendant's railroad crosses the highway at the east end of a deep cut, through which defendant's track extends westward from the crossing, and that, by reason of a curve in the cut and track, immediately west of the crossing, travelers nearing it cannot see engines or cars approaching it from the west, until the engines are within 50 feet of the crossing; that there is a heavy down grade from the west at and near such crossing; that all these conditions existed on July 30, 1907.  The complaint further alleges that defendant was negligent in the following respects: (1) In not having a full train crew sufficient to manage its cars; (2) in not reducing the speed of its train to a rate not exceeding three miles an hour, when approaching the crossing; (3) in not sounding its whistle and ringing

its bell when within 900 feet of the crossing; (4) in not maintaining a watchman or automatic sounding signal, or other appliance to warn travelers of the approach of trains.                                                    REVERSED.

For appellant there was a brief over the names of *Mr. William W. Cotton, Mr. Arthur C. Spencer, Messrs. Cochran & Cochran* and *Mr. James G. Wilson,* with oral arguments by *Mr. Spencer* and *Mr. Charles E. Cochran.*

For respondent there was a brief over the names of *Messrs. Ivanhoe & Hodgin,* with an oral argument by *Mr. Francis S. Ivanhoe.*

MR. JUSTICE MCBRIDE delivered the opinion of the court.

The legal questions raised on appeal are so numerous that the most feasible method of discussing them will be to take each alleged ground of negligence separately, and consider it and the evidence and law applicable thereto. The first ground of negligence alleged is the failure of appellant to keep a watchman or automatic signal apparatus at the crossing where the accident occurred. The complaint alleges, and the evidence shows, that the highway, where deceased was traveling, crosses the railroad track at the east end of a long curving cut, which prevents any view of the track, for quite a distance on its southerly side, for 150 feet or more before the highway reaches the track. There is a very steep grade toward the track, being practically level at the crossing. In order to see down the track it is necessary for a traveler to practically be upon it, and even then a curve prevents his seeing very far. The town of Perry is a small lumbering hamlet, containing a population of about 300 people, part of whom reside on the hill south of the railroad and the remainder north, below the hill. The evidence discloses no other way of connection by wagons than the highway in question. There can be no doubt but this was a "blind crossing," more than usually danger-

ous to travelers, both by reason of its proximity to the cut, and from the fact that it formed part of a connecting link between the two divisions of the village. An added danger arose from the fact that there was a dam in the river at this point, the roaring of which rendered it difficult to hear and locate trains. A sawmill nearby also furnished an additional voice to the general chorus. There was testimony that at times, and under certain conditions, the echoes from the high walls of the canyon— through which the road passes—so reverberated the sound of trains and whistles as to deceive travelers into the belief that trains coming from the west were coming from the opposite direction.

1. Under these conditions, and in this state of the testimony, the court, against the objection of defendant, left to the jury the question whether defendant was negligent in not keeping a watchman, at the point where the accident occurred, to warn travelers. We do not think this was error. It goes without saying that it is the duty of a railroad company to use all reasonable precautions to protect the traveling public from injury from the necessarily dangerous agencies employed by it in carying on its business. As a corollary to this proposition, it follows that such precautions should be such as are reasonably commensurate with the dangers incident to a particular situation or locality. What would be reasonable precaution at a crossing where the view of the track is open and unobstructed, might be gross negligence at one where the surroundings make such an inspection by the traveler impossible or unreasonably difficult. Their duty is a shifting obligation, depending upon the circumstances of each particular case.

2. To require a flagman or automatic signals at every crossing would be to entail upon railroad companies an intolerable burden and expense. To even require such precautions at every crossing where the view of the track is obstructed would be going farther than justice or

sound law will permit, but there are situations peculiarly dangerous, such as the one described in the testimony for respondent. In a case where it is claimed that there was an obstructed view of the track, which was upon a heavy descending grade, a highway approaching it upon a like grade, a waterfall and sawmill in the neighborhood, to prevent the trains being heard, and possibly a reverberation in the canyon that was calculated to deceive the ear as to the direction of sounds, we think it is proper for the court to submit to the jury the question whether defendant was negligent in not providing a watchman, or some automatic signal, to warn travelers of the approach of trains, especially where the crossing was not a country crossing, but in a village of 300 inhabitants, and the only crossing by which teams could go from one part of the town to the other, and one which of necessity must have been used by a great number of people. The authorities are not uniform upon this subject, some going even beyond the doctrine that we here hold applicable to the case at bar, and others holding that, unless some statute requires a flagman or automatic warning, a railway company is not negligent in failing to provide one.

3. A full citation of decisions on this subject would prolong this opinion to an unnecessary length, but, as this is the first time this court has been called upon to directly decide it, a reference to some of the leading text-books on this subject, will not be out of place. Thompson, Neg. (Volume 2, § 1527), says:

"On the one hand, it has been held that a railroad company is not required, in the exercise of reasonable care and diligence, to maintain a gate and gateman at all crossings, but that there must be peculiar hazard at a particular crossing to render it negligent in failing to maintain a gate and gateman thereat; and whether there is such hazard is a question for the jury. * * The Court of Appeals of Kentucky have used the following language on this subject, which has been quoted with approval by the Supreme Court of the United States: 'The doctrine with reference to injuries to those crossing the track of

a railway, where the right to cross exists, is that the company must use such reasonable care and precaution as ordinary prudence would indicate. This vigilance and care must be greater at crossings in a populous town or city than at ordinary crossings in the country, so what is reasonable care and prudence must depend upon the facts of each case. In a crossing within a city, or where the travel is great, reasonable care would require a flagman constantly at the crossing, or gates or bars, so as to prevent injury; but such care would not be required at a crossing in the country, where but few persons pass each day. The usual signal, such as ringing the bell and blowing the whistle, would be sufficient.' While the common law does not attempt to designate the mode in which sufficient notice of a train's approach to a crossing is to be given, and there is no common-law duty to have a flagman or gates at crossings, unless peculiar circumstances require it, the absence of flagmen and gates may be taken into consideration by the jury, together with other facts, to determine the rate of speed consistent with public safety at a given point. In other words, the question whether a railroad company has been guilty of negligence in not maintaining gates and flagmen at a highway crossing, in the absence of a statute or municipal ordinance requiring it, will ordinarily be a question for the jury; and this is merely a branch of the general doctrine that what precautions are reasonably necessary for the safety of the public at such crossings is for the jury to determine."

Criticising the opposite view, the same author says:

"This doctrine which commits the public safety to the tender mercies of the railroad companies until the legislature intervenes ought not to invoke one word in its favor." 2 Thompson, Neg., § 1537.

And again, at section 1526, he states:

"With the development of electrical science and the improvements in electrical appliances, electric bell signals at railway crossings are coming into use. It is understood that these bells are so arranged and connected as to be sounded by a current of electricity, communicated from an approaching train when it arrives within a given distance of the crossing. Doubtless it will soon become a recognized rule of law that the failure to have such a

signal at a crossing, in the absence of any other adequate means of protecting travelers, will be evidence of negligence to go to a jury."

We quote these paragraphs not to indicate the kind or measure of protection which the law requires at any particular crossing, but to show that the question of their absence at a dangerous crossing is a matter from which a jury has a right to infer negligence, if, in their judgment, the evidence shows that such precaution is necessary to afford reasonable protection to the traveling public: Patterson, Railway Accident Law, § 157. The decisions are not at all uniform on this subject, but we believe that reason and the weight of authority support the views taken by the text-writers above quoted. But we do not wish to be understood as holding that the necessity for a flagman, or warning signal, is in all cases a question which ought to go to a jury. It is only necessary for us to hold, so far as this case is concerned, and in any other case where the undisputed testimony shows extraordinary dangers, that it is not error for the court to submit to the jury the question whether reasonable care for the safety of the traveling public demands that a watchman or other method of warning than the use of the bell and whistle be adopted.

4. The second ground upon which plaintiff predicated negligence on the part of defendant was neglect to have a full crew of train hands, whereby plaintiff claims that defendant was unable to safely operate its train, and that the train thereby was behind time. It appears from the testimony that one of the brakemen had been injured and left at Pendleton on the down trip, and that when the train returned, going east, he did not report for duty, and the train proceeded on its way without him. He was a brakeman in name only, as the train was equipped with air brakes, and managed entirely from the engine. His duty was confined to handling freight, and otherwise assisting with the actual work of the train. There was

some evidence, from the conductor, that he was compelled
to take the brakeman's place at stations along the way,
and that this might have delayed the train perhaps half
an hour but there was nothing to indicate that the train
was run at any different speed, or managed in any dif-
ferent way, than it would have been had the brakeman
been at his post.  The only, if any, difference, occasioned
by his absence was in the fact of the train having been
rendered thereby half an hour late.

5. Defendant's counsel requested the court to instruct
the jury to disregard the testimony, and the allegations
in the complaint, in regard to the sufficiency of the train
crew.  This instruction was refused, which was error.
There is no law which requires a train to be on time at
stations, and certainly no rule that requires a freight
train to be on time.  The plaintiff's argument is prac-
tically this: Defendant's train had one man less than a
full crew.  By reason of that fact it was half an hour
late, and, by reason of being half an hour late, it reached
the crossing just at the instant deceased did.  Therefore
deceased's death was brought about by the negligence
of the defendant in not having another brakeman.

6. A person is liable for any act the injurious conse-
quences of which an ordinarily prudent man would be
likely to foresee and guard against.  Prudence and fore-
sight raised to the fourth power hardly would have fore-
seen that the lack of a brakeman would have delayed the
train at any particular crossing till its arrival would
exactly coincide with the arrival, upon the track, of a
traveler who might thereby be run against and killed.

7. As negligence cannot be predicated upon the mere
fact that a train is behind time, it matters not from what
particular cause the delay arose.  If this had been a
train managed by hand brakes, another question might
have arisen as to whether there were a sufficient crew to
keep the speed properly under control; but, for reasons
before stated, that question cannot arise under the state

of facts shown in this case. In instruction No. 19 of defendant's abstract, the duty of a railway company to man its train with a sufficient crew is affirmatively stated to the jury. This instruction could have reference to nothing else than the want of a brakeman; and, in view of the evidence, and of defendant's request to take this alleged cause of recovery from the jury, it was misleading, and the giving of it was error.

8. The next ground of negligence alleged in the complaint is the failure to reduce the speed of the train when approaching the crossing. It may be premised that no rate of speed of trains, however high, is negligence *per se*. The usefulness of railways would be seriously impaired if they were compelled to run at such a rate of speed, even at crossings, that travelers, careful or careless alike, would be safe. "The very purpose of locomotion by steam upon railways is the accomplishment of a high rate of speed in the movement of passengers and freight. It is authorized by law that a railroad company, in propelling its trains at high speed along its tracks in the open country, is simply engaged in the lawful exercise of its franchise. If it is an evidence of negligence that a train is run at this rate of speed, it must be because running at a less rate is a legal duty; but there is no such duty established either by statute or decision. While there may of course be circumstances which require a diminished speed, it is only the force of these circumstances which creates such a duty." *Reading R. Co.* v. *Ritchie,* 102 Pa. 425.

9. With this general, but wholly fair, statement of the law in mind, it becomes pertinent to inquire what circumstances, on the part of a railway, create a duty to slacken the speed of its trains. And we find that dangerous and obscured crossings where there are no gates or flagmen, are spoken of as prominent in this respect. 2 Thompson, Neg., § 1875; Patterson, Railway Accident Law, §§ 157, 158. The crossing where this accident happened was

shown to be very dangerous in many respects. Making allowance for the tendency to exaggerate facts, when a railway corporation is defendant, which is too frequently apparent in cases of this kind, there is some very credible testimony, which tends to show that the crossing was an exceedingly dangerous one, and it was proper, under all the circumstances, for the court to submit the question of reasonable speed to the jury.

10. Defendant's requested instruction No. 56 probably states the law correctly if a jury of lawyers had been impaneled to try the cause. It reads:

"I instruct you that the convenience of the public and commercial industry demand the conveyance of passengers and freight at a greater speed than can be accomplished by ordinary conveyance; that the railroad cannot be required to slow down its trains or run at such a rate of speed across country crossings, or those in small villages, as will preclude the possibility of accident. Such requirements would be incompatible with rapid transit required of such companies. No rate of speed across a country crossing, or one in a small village, is of itself negligence; and, if you find from the evidence that the rate of speed at which said train was being operated was consistent with the obligation resting upon the company, then and in that event you cannot find the defendant guilty of negligence on account of the rate of speed at which said train was being operated."

Now, under our present system of selecting jurors, we get a body of men in the box whose capacities range from the well-educated to the ignorant man. An educated man, if he had this instruction with him, would probably be able to gather from it that a railroad company had a right to run its trains at any speed across a country crossing, which is only true in a qualified sense; but even he would find himself nonplussed when he came to inquire what "the obligation resting upon the company" really meant. And, unless he had a considerable acquaintance with railway accident law, he would remain in darkness.

11.   Unless an instruction is so definite as to enable
a man of average intelligence to understand it, it ought
to be refused as misleading and tending to confuse,
rather than instruct, a jury.   A court is not bound to
give, and ought not to give, an instruction, even though
it states the law correctly, which is not couched in
language sufficiently untechnical to be comprehended by
the average juror.   Requests for instructions are per-
mitted so that the jury may be fully informed as to the
law, and not to enable litigants to ensnare an unwary
court into technical error which will secure a reversal
in case of defeat.   There was no error in refusing this
instruction.

12.  The last alleged ground of negligence, upon which
evidence was introduced, is upon the alleged failure to
blow the whistle and ring the bell.   There is the usual
conflict of testimony on this subject.   One witness
testified that the whistle was not sounded, that he was
near the whistling station when the train passed, and
that his father, who was with him, spoke, at the time,
about the failure to whistle.   Others testified that they
did not hear the whistle, though shown to have been in
a position where they might have heard it, while some
testified that they heard the train whistle.   The engineer
and fireman testified that the whistle was blown.   The
jury had a right to find either way on this question, and
the result shows that they found neither way.   The court
submitted a special interrogatory on this part of the
case, and the jury reported that they were unable to
agree on that point.   Thereupon the court instructed
them that they could return a general verdict, and report
a disagreement, as to the special matter submitted to
them, which they did.   From this it is evident that the
failure to whistle was not one of the grounds of negligence
upon which the jury were agreed in finding their verdict.
When the jury fails to agree upon the answer to an inter-
rogatory, but returns a general verdict, the effect of

such failure to agree is to eliminate from the case the
the matter embraced in the interrogatory, at least so far
as it is sought to make such matter a substantive ground
for recovery.

13. If negligence, in respect to sounding the whistle,
had been the only ground upon which plaintiff sought
a recovery, the answer of the jury—that they could
not agree as to whether the whistle sounded—would
have been practically a disagreement as to whether
the respondent should recover at all. *Tourtelotte* v.
*Brown,* 1 Colorado App. 408 (29 Pac. 130). But if
several grounds of recovery are alleged, and the in-
terrogatory goes only to one of them, the general verdict
will stand, notwithstanding the failure of the jury
to agree upon an answer to the interrogatory, as it will
be presumed that the jury based their verdict upon some
other ground than the one concerning which the court
asked a special finding. Clementson, Special Verdicts,
109; *Schneider* v. *Railroad Co.,* 42 Minn. 68 (43 N. W.
783).

14. In the case at bar the interrogatory was a very
proper one under the circumstances; and, while it
was within the discretion of the court to receive the
general verdict, yet we venture to suggest—in view of
a retrial—that, where the court, in the first instance,
has decided to submit a special finding, it should
hesitate to allow a jury to return a general verdict
and ignore the finding. It leaves an unpleasant
doubt as to whether the jury stood part for a recovery
on one ground, and part for a recovery on another, or
whether they rendered a verdict based on general prin-
ciples and sympathy. A good verdict should be based
upon some ground upon which all the jurors agree.
*Parrot* v. *Thacher,* 9 Pick. (Mass.) 425. In the case last
cited Mr. Chief Justice PARKER says: "We certainly do
not mean to encourage the practice of questioning jurors
as to the ground of their opinions; but, where there are

distinct grounds upon which the verdict may be given, perhaps it is not improper to ascertain which they adopted, as there may be little or no evidence upon one, and sufficient upon another, and, if it appears that they did not agree upon either of the grounds, I do not see how their verdict can stand; unanimity being required. If there are three distinct grounds upon which an action can be maintained, all independent of each other, and four only of the jury agree upon each, I do not see how they can amalgamate their opinions and make a legal verdict out of them."

15. Defendant in this case pleaded contributory negligence on the part of the deceased, and the evidence shows that he drove upon the track without stopping, looking, or listening, or apparently giving much attention to the train. It is true that one witness—the engineer—says that he looked to the east, the opposite direction from that of the approaching train. He could not see westward any great distance, and only his ears could have warned him of danger in that direction. It is possible that the alleged echo gave him a false idea of the direction from which the train was coming, or that no whistle was blown, or bell sounded, though this supposition rests on very slight evidence. In a man of mature years we would be inclined to hold that a case of contributory negligence was so satisfactorily made out that the verdict ought not to be allowed to stand. But we are not prepared to apply that rule to the case of a boy of the age of deceased. It is true he was shown to be a bright, intelligent boy, the equal, and perhaps the superior of many boys of his age. He had driven over this crossing nearly every day for over two weeks, and had been told by his father to be careful at the crossing. A lady had warned him to be careful, and he had answered that he knew enough to take care of himself, and, no doubt, with the self-sufficiency of youth, he thought he did. But with all his intelligence he was yet a child. He

"thought as a child and understood as a child," and in an emergency he would act as a child, and it would be a harsh rule that would hold him to the same strict accountability that would be required of a person of mature years. The decisions of the courts upon this subject are as various as the temperaments of the different judges, some courts holding a child of seven years to the strict rule of care. *Hughes* v. *Macfie,* 2 Hurl. & Colt. *744; *Mangan* v. *Atterton,* L. R. 1 Exch. 239. The brutal doctrine of the cases last cited has found little favor in America, and the general rule is· that an infant is required to exercise just that amount of care in avoiding injury that the evidence shows him to be capable of. The authorities on this subject are all collated in Thompson, Negligence, and the length of this opinion makes it impracticable to further discuss them here: 2 Thompson, Negligence, § 1618, and cases cited.

16. While a boy of the general intelligence of the deceased, as shown by the testimony, approaches in some respects the standard of an adult, it is not for the court, as a matter of law, to say that he had the judgment, the power of reflection and discrimination, to appreciate the full extent of the danger at this crossing. This was a matter for the jury. We find no error in the rulings of the court upon the admission of testimony, and pass that branch of the case without further comment.

Counsel for defendant presented to the court a small treatise on the law of negligence in the form of requests for instructions, most of which the court refused to give, and such refusal is assigned as error. Had the court refused all of them on the ground that they were too voluminous to be properly considered, and therefore not calculated to enlighten the jury, the writer of this opinion, speaking for himself, and not for the court, would have been inclined to hold that course proper. The court was expected, during the argument of counsel, not only to

watch the progress of that argument, and see that it was kept within due bounds, but to formulate his own charge and examine the instructions submitted as to their pertinency and harmony with the law, and the jury were expected to remember and understand and apply all this dissertation to the facts of the case at bar. It has taken the writer of this opinion several days to examine these instructions, with a view to their legal sufficiency, and as a long-time sufferer at circuit, from requests for instructions that, by reason of their number, fail to instruct, and only tend to confuse, instead of clarifying the issue to be tried, he registers a protest against the growing tendency among lawyers to present requests for instructions covering the whole body of the law.

17. It was error for the court to allow the counsel for plaintiff to argue to the jury that the defendant was negligent in allowing the bluff to remain where it was. Counsel for plaintiff explains in his brief how the remark happened to be made; and if that explanation, or the basis of it, had been incorporated in the bill of exceptions, it would probably appear that no injury was done to defendant's rights by the argument objected to, but we are bound by the bill of exceptions, and cannot look outside of that to ascertain what took place.

18. We think the court erred in giving instruction No. 24 in defendant's abstract. That part of the instruction which we deem erroneous reads: "Plaintiff need not, however, prove that the defendant was negligent in all of the particulars alleged, but only that it was negligent in some of the particulars alleged," etc. Now one of the particulars alleged was the lack of a brakeman, which was, by this instruction, impliedly submitted to the jury, along with other alleged acts of negligence on the part of defendant, when it should have been affirmatively withdrawn from their consideration. Instruction No. 30 is faulty for the same reason.

As this case will have to be retried, we will briefly
and without entering into any long discussion of the law,
indicate our conclusions as to the requests of defendant.
Request No. 34 was properly refused, as there was no
evidence that the engineer saw the deceased at any time
or place when he could have stopped the train or
averted the accident. Instructions No. 35, 36, and 37
should have been given. Instruction No. 38 was properly
refused. It attempts to apply to deceased the same rule,
in regard to contributory negligence, that the law applies
to persons of mature years. Instruction No. 39 is
misleading, and is sufficiently covered by the general
instructions. Instruction No. 40 should have been given.
Instruction No. 41 should have been given. There was
no error in the court's refusing instruction No. 42 of
defendant's assignment of errors.

19. The court was asked to draw a comparison
between the value of the evidence of the witnesses who
testified that they heard the whistle and those who testified
that they did not hear it. Under our statute "the jury
are the sole judges of the value and effect of evidence,"
and for the court to say that the testimony of a witness
who says that a thing actually occurred is of more value
than that of one who says that he did not see the thing
occur or hear it, would be approaching dangerously close
to a comment on the evidence. The comparative value
of such testimony depends upon the means of knowledge
of the witness; his opportunity to have heard the whistle,
if actually sounded, his apparent candor and general
demeanor upon the witness stand.

20. We are aware that there are some decisions that-
go as far as the instruction requested by defendant in
this case, and hold that such instruction should be given.
This is notably true in Kansas and some other jurisdic-
tions. *Missouri Pac. R. Co.* v. *Moffatt,* 56 Kan. 667
(44 Pac. 607). In other cases the courts have expressed
opinions as to the comparative value of such testimony,

while themselves commenting upon the facts, in particular cases where the question as to whether the point should have been presented by way of an instruction to the jury was not involved. The case of *Chicago & Alton R. Co.* v. *Robinson,* 13 Am. & Eng. R. Cas. 620, cited by appellant, is an instructive case. There the court instructed the jury as follows:

"In an action against a railroad company, alleging negligence in not sounding the whistle or ringing a bell on approaching a road crossing, a jury may be justified in giving greater weight to the testimony of witnesses who state negatively that the whistle was not sounded or the bell rung, than to that of witnesses stating affirmatively that such was done."

Commenting on this instruction, the Supreme Court of Illinois say: "It is obvious error for the court to pronounce as to what is the better evidence in the case, or as to what the jury may so regard. It is the province of the jury to determine as to what evidence they will give the greater weight, and their privilege in that regard should not be interfered with by the court." The lower court in that case was at one extreme, and defendant in this case is at the other. Any instruction on the subject would have been an invasion of the province of the jury.

We find no other error in the charge of the court, or in its refusal of the requests of defendant. The general charge seems, with the slight exceptions already noted, to have been sufficient to fairly present the questions at issue in a manner within the comprehension of an average jury; but, for the errors heretofore specified, the decision of the lower court will have to be reversed, and the case remanded, with directions to proceed in a manner not inconsistent with this opinion.          REVERSED.