Argued October 5; affirmed October 26, 1939

IRWIN *v.* SOUTHERN PACIFIC CO. ET AL.

(95 P. (2d) 62)

Department 1.

*W. C. Winslow*, of Salem (Norman K. Winslow, of Salem, on the brief), for appellant.

*James C. Dezendorf*, of Portland (Alfred A. Hampson, of Portland, on the brief), for respondents.

RAND, C. J. This was an action to recover for the death of plaintiff's intestate, who was fatally injured in a collision of a truck driven by him with the side of one of the defendant company's logging trains, which train at the time was standing on a public crossing and taking water for its engine. At the close of plaintiff's case in chief, the trial court granted defendant's motion for a judgment of involuntary nonsuit, and the plaintiff has appealed.

This ruling is assigned as error. In deciding this question, the evidence must be considered in the light most favorable to the plaintiff.

The complaint charges that the defendant company and the conductor of the train were negligent in permitting the train to obstruct the highway for more than ten minutes and in allowing the cars to stand on the crossing without providing lights or a flagman, or without ringing the bell or sounding the whistle, or without giv-

ing some other warning of the presence of the train on the crossing.

It was admitted upon the trial that the defendant company has a standing rule requiring its trainmen, when a public crossing is obstructed for more than five minutes, to uncouple the train and remove the cars from the crossing. There was evidence tending to show that this crossing had been occupied by the train for more than five minutes when the collision occurred, two witnesses having testified to that effect. Both testified that they were indoors at the time and heard the train come in and heard the crash of the collision, one of whom estimated the time between the two, saying it was a mere guess upon his part, from ten to fifteen minutes, and the other from five to eight minutes.

■ Considering this testimony in the light most favorable to plaintiff, we assume, for the purposes of this case, that there was a violation of the defendant company's rule in permitting the train to stand on the crossing for more than five minutes. The testimony shows, however, that the train had been stopped temporarily to take water from a water-tank situate some 75 feet south of the highway and was occupying the crossing for that purpose when the collision occurred, but there was nothing tending to show that the time taken for that purpose was unnecessary or unreasonable.

■ Plaintiff, however, contends that the defendants were negligent because they did not comply with the rule above referred to. This rule was designed merely to prevent traffic upon a public crossing from being unduly delayed and not to prevent motorists from running into the train. It does not have the force and effect of a statute and, hence, proof of a failure by

the trainmen to comply with it, nothing else being shown, is no evidence of negligence.

We will now consider the question of whether, under the circumstances shown by the evidence to which we will now refer, the defendants were negligent in failing to provide lights or a flagman or to give other warning of the presence of the train on the crossing.

The collision occurred at about 8:30 o'clock on the evening of June 17, 1939. It was not dark at the time, although it had been raining, was very cloudy and the visibility was poor. The scene of the accident was at the crossing of the North Santiam highway and a branch line of the defendant company, running between Salem and Mill City. Plaintiff's intestate was driving westerly on the highway and returning to his home after having been employed from 8 o'clock in the morning in driving the truck and distributing goods at various points east of Aumsville. He was thoroughly familiar with this crossing, having driven over the same frequently for some eleven years. The highway was paved with a black surface and the railroad track over the highway was elevated above the common level of the highway, as variously estimated, from two to four feet and, to overcome this difference in elevation, the highway had been raised on each side of the track for a distance of some forty to sixty feet. In reaching the crossing, plaintiff's intestate drove over a straight highway for a considerable distance and there was nothing to obstruct his view. According to plaintiff's own evidence, her intestate was driving at the time of the collision with his lights on and at the rate of thirty-five miles per hour, and the combined weight of his truck and load was about 7½ tons.

The cars which obstructed the highway were what is referred to in the evidence as "logging flats" and were described by one of plaintiff's witnesses as follows:

"A. It is a flat car about thirty feet long, with a double set of wheels on each end, and the center of them is just a long bar of steel through there. Q. Would you be able to give me the dimensions of that piece of steel? A. I think—looking at it from the side view—it would be—possibly about ten inches. Q. Deep? A. Yes, ten inches deep, may be more than that—ten or twelve inches, I would say. Q. Yes, Then how many trucks does each one of the log flats have,—I mean wheels? A. Well, there is a double truck at each end, four wheels on each end and a spider connects the two together, long beams."

Another witness described them as follows:

"A. Yes, sir, it is a car with two trucks, consisting of two wheels each, one on each end, with a steel beam interlocking, carrying the air equipment to stop the car with, and on the ends also are the couplings or whatever is necessary to couple the train together and the joining hoses."

Upon her argument here, the plaintiff contended that the steel bar which connected the front and rear trucks together was only some ten to twelve inches in width and could not be seen, because of its dark color at that time of night, by an approaching driver.

The evidence further shows that the truck driven by plaintiff's intestate did not collide with the steel beam but hit the side of the train where two of the cars were coupled together and, hence, had he been looking he would have seen directly in front of him and on his side of the train a double set of wheels on each car, two platforms and the coupling between the

cars. This coupling was broken in the collision and both cars were thrown from the track and the truck did not come to rest until it had passed some six or eight feet beyond the west rail of the track, carrying with it on its front fenders a part of one of said cars. These cars were empty at the time.

The railroad track crosses the highway at nearly right angles and warning signs of the crossing are maintained both by the railroad and the state highway commission on each side of the track. As stated, the highway from the east over the crossing was a straight-away and plaintiff's intestate was traveling west upon the highway. So far as the testimony shows, the crossing was not unusually dangerous or extra hazardous.

 It is obvious that a railroad cannot be operated without obstructing public crossings at times and, when so occupying a crossing for some necessary purpose, such as the taking of water for one of its engines, the obstruction of the crossing, unless unreasonably prolonged, is lawful. It is well settled that, in the absence of a statute, the mere fact that a railroad obstructs a street or highway at a public crossing, by letting a train of cars remain thereon for a reasonable length of time and for proper purposes, is not negligence and the company is not responsible for injuries caused thereby: 33 R. C. L., p. 994; *Philadelphia & R. R. Co. v. Dillon,* 31 Del. 247, 114 Atl. 62, 15 A. L. R. 894 and note; *Gilman v. Central Vermont R. Co.,* 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102; *Trask v. Boston & M. R. Co.,* 219 Mass. 410, 106 N. E. 1022.

█ It is well settled that a train standing upon a crossing, which is not extra hazardous, is adequate notice of its own presence and that no signals or other

warnings are required to be given. In *Dolan v. Bremner*, 220 Iowa 1143, 263 N. W. 798, 800, the court said:

"* * · * Railroad tracks necessarily cross public highways, and it is necessary that trains at times be stopped upon such public highway crossings. When this is done and the railroad company is making reasonable and legitimate use of such crossing, the presence of the train itself is sufficient warning to any one using the highway, and there is no duty upon the part of the railroad company to anticipate that one using the highway will not see such train and be apprised of its presence as fully as he would be if other signs or warnings were used."

In *Gage v. Boston & Maine Railroad*, 77 N. H. 289, 90 Atl. 855, 856, L. R. A. 1915A, 363, the plaintiff, on a dark and foggy night, drove his automobile into one of the cars of a freight train which was slowly moving over a public highway crossing. The plaintiff alleged that, because of the weather conditions, he was prevented from discovering the presence of the train until it was too late for him to avoid a collision and that the defendant company was negligent in failing to provide gates or lights or a crossing flagman at the crossing occupied by the train. In the course of the opinion in the case, the court said: .

"When cars are upon a crossing under such circumstances the fact that they are there is a sufficient warning to the traveler upon the highway that he cannot occupy the crossing at the same time. No other signals or warnings are necessary or required in the absence of a statute imposing such a duty upon the railroad. As there is no statute or municipal regulation requiring the defendant to provide lights at this crossing the mere fact that there were none on the night of the accident does not prove the negligence of the defendant. * * *"

In *Trask v. Boston & Maine R. R.*, 219 Mass. 410, 106 N. E. 1022, 1024, the plaintiff drove an automobile into the side of a train on the crossing on an obscure track in a village. In holding that the railroad company was not liable, the court said:

"In order to charge the defendant with negligence it must be found that its employees, in the exercise of reasonable care would have known that on account of the darkness the cars upon the crossing were such an obstruction that people traveling along the highway, in an automobile, at a reasonable rate of speed, properly equipped with lights and carefully operated, would be liable to come in collision with them. We are of opinion that upon the evidence the conditions shown were not such as to warrant a finding that the defendant was negligent in failing to provide lights or a flagman, or to give other warning.

"The defendant and its servants, in the exercise of reasonable care, were justified in believing that travelers in automobiles properly lighted and driving at reasonable speed would observe the cars upon the crossing in time to avoid coming in collision with them."

In *Wink v. Western Maryland Ry. Co.*, 116 Pa. Super. 374, 176 Atl. 760, 761, the court said:

"Warning signs and signals are provided by railroad companies to warn of the approach of a train to a crossing and not of the fact that the crossing is already occupied. The cars themselves on the track are sufficient warning to a driver of a car of that fact.

"In Philadelphia & R. Ry. Co. v. Dillon, 1 W. W. Harr. (31 Del.) 247, 114 A. 62, 66, 15 A. L. R. 894, an automobile collided with a standing freight car blocking a street where there was an absence of a light or warning of any kind. The court there said: 'The trainmen of the defendant had a right to assume that a reasonably careful person driving an automobile on that highway at that time would adopt such lights and rate of speed as that he could and would bring his automobile to a standstill within the distance that he could plainly

see the train of the defendant, and so avoid running his machine into it, and therefore these employees of the defendant company were not negligent in failing to give warning by lights, or otherwise, of the presence of the train as an obstruction to the highway.' See, also, Gage v. Boston & M. R. R. Co., 77 N. H. 289, 90 A. 855, L. R. A. 1915 A, 363; Gilman v. Central Vermont Ry. Co., 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102; Scott v. Delaware, L. & W. R. Co., 222 App. Div. 409, 226 N. Y. S. 287; Gallagher v. Montpelier & W. R. R. Co., 100 Vt. 299, 137 A. 207, 52 A. L. R. 744; Yardley v. Rutland R. Co., 103 Vt. 182, 153 A. 195; Cleveland, C. C. & St. L. Ry. Co. v. Gillespie, 96 Ind. App. 535, 173 N. E. 708; Schmidt v. C. & N. W. Ry. Co., 191 Wis. 184, 210 N. W. 370; Crosby v. Great Northern Ry. Co., 187 Minn. 263, 245 N. W. 31. These cases all hold that signals for trains approaching a highway crossing are solely for the benefit of drivers on the highway, so as to warn them of an on-coming train, and that they are not required if, as here, the train is actually on the crossing when the driver arrives. Then no other signals or warnings are necessary in the absence of a statute. There is none in this commonwealth imposing such a duty on railroads."

Holding to the same effect, see *Pennsylvania R. Co. v. Huss,* 96 Ind. App. 71, 180 N. E. 919; *Jones v. Atchison, etc. Co.,* 129 Kan. 314, 282 P. 593; *Texas, etc. Co. v. Stratton,* (Tex. Civ. App.) 74 S. W. (2d) 741, and *McParlan v. Grand Trunk Western R. Co.,* 273 Mich, 527, 263 N. W. 734. In the case last cited, it was held that:

"* * * There is no common-law duty to provide greater warning to negligent or unlawful drivers than to careful ones."

In *St. Louis-San Francisco Railway Co. v. Guthrie,* 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110, the court said:

"The rule is that, in the absence of statutory requirement, the mere leaving of a train across the high-

way without lights or other signals to disclose its presence there is not per se negligence, and that, as for injuries received by running into the train, the obstruction of the highway is not to be considered as the efficient cause of such injuries, but merely as a condition which in and of itself furnishes no cause of action, and the fact that the condition of obstruction is unreasonably prolonged makes no difference in the application of the rule. The rule sanctioned by the authorities to which we have referred is that, in order to charge the railroad with negligence in such a case, it must be shown that defendant's employees in charge of the train, in the exercise of reasonable care, ought to know that on account of darkness the cars upon the crossing are such an obstruction that people traveling along the highway in automobiles properly equipped with lights and carefully operated at a reasonable rate of speed would be likely to come into collision with them; in other words, the employees of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them. It can hardly be contended with reason that the precautions in respect of which, according to the complaint as thus far stated, the defendant failed in its duty, would be necessary in the daytime. It would seem to be a reasonable corollary that on any occasion, day or night, when the occupation of the crossing would be visible to a traveler using such care for his own safety as the employees of the railroad have a right to presume he will use, in time to allow the traveler to stop before coming into collision with the cars, the railroad ought not to be held liable."

Cited in support thereof are the following cases: *Trask v. Boston & M. R. Co.*, supra; *McGlauflin v. Boston & M. R. Co.*, 230 Mass. 431, L. R. A. 1918E, 790, 119 N. E. 955; *Gilman v. Central Vermont R. Co.*, supra; *Gage v. Boston & M. R. Co.*, supra; and *Orton*

*v. Pennsylvania R. Co.*, (C. C. A. 6th) 7 F. (2d) 36. See, also, note, 56 A. L. R., 1114.

Our own decisions upon this question are in accord with those above cited. See *Meaney v. Portland Electric Power Co.*, 131 Or. 140, 282 P. 113, and *Russell v. Oregon R. & N. Co.*, 54 Or. 128, 102 P. 619. In the Meaney case, the court, speaking through Mr. Justice McBride, said:

"We have held in this state, and in conformity with a great majority of the holdings of other states, that, unless the evidence shows that the crossing is particularly dangerous, there is no legal duty on the part of the railroad company to maintain lights, gates or a watchman for the protection of travelers upon the highway.

"In Russell v. O. R. & N. Co., 54 Or. 128, 136, 102 P. 619, we held that, where the evidence showed that the crossing was exceptionally dangerous, the question of the necessity of lights or gates, or a watchman, should be submitted to a jury, the summing up of our whole utterance on this question being as follows:

" 'But we do not wish to be understood as holding that the necessity for a flagman, or warning signal, is in all cases a question which ought to go to a jury. It is only necessary for us to hold, so far as this case is concerned, and in any other case where the undisputed testimony shows extraordinary dangers, that it is not error for the court to submit to the jury the question whether reasonable care for the safety of the traveling public demands that a watchman or other method of warning than the use of the bell and whistle be adopted.' "

The action in the instant case was based wholly upon the alleged negligence of the defendant company and the conductor of the train in letting the train stand on the crossing without lights, flagman or other warning of its presence. In the absence of some proof of

negligence no recovery could be had in the action. Under the authorities above cited, the crossing not having been shown to have been extra hazardous, the action of the defendants, in leaving the train on the crossing without lights, flagman or other warning of its presence, was not negligence upon their part and, therefore, in the absence of such proof, the action would not lie. Notwithstanding this, plaintiff contends that the case should have been submitted to the jury for determination. In the absence of some proof of negligence, such a submission would have been erroneous. Moreover, it clearly appears from the evidence that plaintiff's intestate was negligent in driving his truck at that time of day over a crossing with which he was thoroughly familiar at the rate of thirty-five miles per hour without slowing down to see that no train was standing thereon, and this contributory negligence upon his part would bar a recovery in this action even though the defendants had been negligent.

For these reasons, we hold that the action of the trial court, in granting defendants' motion for a judgment of involuntary nonsuit, was proper. Judgment affirmed.

KELLY, BAILEY and BEAN, JJ., concur.