DEPOW, Respondent, vs. CHICAGO & NORTHWESTERN RAILWAY COMPANY, Appellant.

*October 11—October 29, 1912.*

*Railroads: Negligence: Obstructing street crossings: Municipal ordinance construed: Injury to traveler on street at night: Damages: Evidence: Opinions of experts: Excessive award: Appeal: Reversal: When new trial ordered.*

1. A municipal ordinance prohibiting railroads from obstructing the streets with their engines or cars, without naming a time limit within which cars may remain upon a crossing, is construed as not having been intended to interfere with the ordinary usual and careful operation of railroad trains, but merely as prohibiting unnecessary stops upon street crossings, or the continuation of a necessary stop for an unreasonable or unnecessary time.

2. Opinions of experts as to whether plaintiff's present physical condition was caused by the injury complained of, and as to the extent of his disability, are not absolutely binding upon the court.

3. In an action for personal injuries, where a judgment for plaintiff is reversed solely upon the ground that the damages awarded are excessive, this court will ordinarily name a smaller sum which the plaintiff may accept and terminate the litigation.

4. But, in an action for injuries sustained through driving a team of horses against a train of cars standing at night on an unlighted railroad crossing, it appearing not only that the award

of $9,500 is much too large, but also that the evidence tending to establish defendant's negligence is very uncertain and unsatisfactory, the judgment is reversed and the cause remanded for a new trial.

APPEAL from a judgment of the circuit court for Oconto county: S. D. HASTINGS, Circuit Judge. *Reversed.*

*Edward M. Smart,* for the appellant.

For the respondent there was a brief by *Classon & O'Kelliher,* and oral argument by *D. G. Classon.*

TIMLIN, J.   The plaintiff, traveling at night on the street, drove his horses against the side of a train of flat cars standing on a railroad crossing and was thereby injured.   He was riding with his wife in a sleigh drawn by a team of horses and going west.   There were several railroad tracks on this crossing and switches north and south of the crossing.   The crossing was in a depression in the street of three and one-half feet in a distance of 183 feet.   A flagman was kept at this crossing in the daytime and an electric light at night.   This electric light was maintained by an electric light company by contract with the city and paid for by the railroad company.   On the night in question the electric lights in the city of Oconto were out by unavoidable accident.   An ordinance of the city of Oconto was introduced in evidence, the first section of which is as follows:

"Section 1. All railroads are hereby prohibited from obstructing the streets of the city of Oconto with their engines or cars, but the standing of cars or engines of a passenger train on the street during the usual and necessary stoppage of the train at a station, shall not be deemed an obstruction within the meaning of this ordinance."

The scope and meaning of this ordinance was not discussed by counsel or explained to the jury.   There are no exceptions to the instructions given to the jury and no requests for instructions.   But there was a motion to set aside the verdict on the ground of excessive damages, which was denied and

an exception taken.   The jury awarded damages in the sum
of $9,500.   The plaintiff has no visible wounds, bruises, or
injuries.   He suffers from nervousness, shortness of breath,
excessive and irregular heart action, and a tendency to per-
spiration.   It is undisputed·that aside from this he possesses
a very excellent physique and fine muscular development.   It
is asserted that he has enlargement of the heart.

The fact that his present condition was caused by the col-
lision with the car standing on the crossing and the extent of
his· disability rest upon the opinions of experts.   Such opin-
ions are not absolutely binding upon the court.   *Bucher v.
Wis. Cent. R. Co.* 139 Wis. 597, 120 N. W. 518.   We are
satisfied that the damages awarded are at least double what
they ought to be on the evidence.   Ordinarily this would re-
sult in reversing the judgment and naming a sum which the
plaintiff may accept and terminate the litigation.   *Lehman
v. Amsterdam C. Co.* 146 Wis. 213, 131 N. W. 362; *Beach v.
Bird & W. L. Co.* 135 Wis. 550, 116 N. W. 245.   But in the
instant case the evidence tending to establish defendant's neg-
ligence is so uncertain and insufficient that we have decided
to remand the cause for a new trial on the merits.   The usual
statute or ordinance relating to the obstruction of the high-
way crossings by trains fixes a time beyond which the crossing
shall not be obstructed, usually five minutes.   There is con-
siderable variety of expression, of course, but the nature of
the subject almost requires that a time be fixed if the statute
or ordinance make any change in what we may call the com-
mon law.   Under our statutes a railway company has a right
to use the street on which its tracks are lawfully laid for legiti-
mate purposes, but it has no right to leave its cars standing
upon the street for an unnecessary and unreasonable length
of time.   *Fay v. M., St. P. & S. S. M. R. Co.* 131 Wis. 639,
111 N. W. 683; *Evans v. C., St. P., M. & O. R. Co.* 86 Wis.
597, 57 N. W. 354; *Bussian v. M., L. S. & W. R. Co.* 56
Wis. 325, 14 N. W. 452; *Janesville v. M. & M. R. Co.* 7 Wis.

484; *Crowley v. C., St. P., M. & O. R. Co.* 122 Wis. 287, 99 N. W. 1016. This is a very general form of statute which fixes the time beyond which the crossing must not be obstructed at five minutes. *Hinchman v. P. M. R. Co.* 136 Mich. 341, 99 N. W. 277; *Comm. v. B., B. & G. R. Co.* 135 Mass. 550; *Ill. Cent. R. Co. v. State,* 71 Miss. 253, 14 South. 459.

It may have been that the jury understood from the ordinance in question that a freight train could not stop upon a crossing at all. The proper construction of the ordinance in question is that the obstruction therein mentioned relates to an unnecessary stop upon a highway crossing or a necessary stop prolonged for an unreasonable or unnecessary length of time. It cannot be presumed that the ordinance was intended to interfere with or prevent the ordinary usual and careful operation of railroad trains. There is no proof in the case that this stop was unnecessary or that it continued for an unreasonable time. The utmost limit of time fixed by the plaintiff's proof is five minutes, although he does say, once or twice, "five or six minutes." The substance of his testimony, however, is to the effect that a certain church is about a quarter of a mile east of this crossing and that he could see the crossing from the time he arrived at that church until he reached the crossing, and that no locomotive passed over it during that time. He drove his horses part of the way on a walk and part of the way on a trot, and estimates that in this way he proceeded at the rate of three miles an hour, or a quarter of a mile in five minutes. The distance of a quarter of a mile is estimated, the rate of speed is estimated, and the time is estimated. The estimate of the rate of speed is very low and conflicts with common experience. On the other hand, the members of the railroad crew testify that the stop was made for the purpose of sending a man ahead to ascertain whether a certain sidetrack upon which they intended to go was clear of cars. To ascertain this the messenger had to travel about 150 feet and return. Some of the

persons in the cab saw the collision and it occurred before this messenger reached his destination and within two minutes from the time the train stopped. So we have on one hand a claim that the train was stopped on the crossing for five minutes, and on the other hand a claim that it was stopped on the crossing for two minutes, and no evidence tending to show that whatever the time was it was unnecessary or unusual or different from the ordinary mode of operating railroad trains. The fact that this crossing was within the switching precinct must be taken into consideration. It may be that ordinary care would require the defendant's employees in charge of the train to notice that the electric light was out at the crossing and to send back one of their number with a lantern to stand on the flat car which was on the highway crossing. But this aspect of the case was not submitted to the jury or tried. The train consisted of a locomotive and tender, a string of flat cars, and a caboose at the end. The operating crew consisted of a fireman, engineer, two brakemen, and a switchman or foreman. The latter was at the rear of the train, the fireman and engineer in the cab, the other brakeman was sent ahead for the purpose mentioned, and the whereabouts of one is not accounted for. The train was pulled across this street crossing so that the rear of the tender was about two car lengths south of the crossing and the third car stood on the crossing. Whether ordinary care would have required the stoppage of the train on the north side of the crossing and sending the brakeman a further distance ahead we cannot say. This aspect of the case was not tried. Much (but not all) would depend upon proof of the usual and ordinary mode of operation under like circumstances. It seems to us clear from the construction of the crossing with reference to the location of switches and side-tracks that it was intended that switching should be carried on over and upon this crossing, and switching cars requires stopping and also back and forward movement.

Nothing that is said in this opinion is to be taken as sug-

gesting that there was or was not in fact negligence on the part of either the plaintiff or defendant, but merely as pointing out the unsatisfactory manner in which the case was tried and giving reasons for the departure from the usual disposition in this court of like cases.

*By the Court.*—Judgment reversed, and the cause remanded for a new trial.