CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *v.* GILLESPIE.

[No. 13,413.   Filed June 27, 1930.   Rehearing denied January 5,
1931.   Transfer denied April 28, 1933.]

*Frank L. Littleton, Walter S. Bend, Forrest Cheno-weth, Harry N. Quigley* and *S. W. Baxter,* for appellant.

*Eikenbary & McCracken* and *Plummer & Plummer,* for appellee.

NEAL, C. J.—By the allegations of her complaint, the

appellee says, in substance: That the defendant, appellant herein, is a railroad corporation and operated a line of railroads from the city of Benton Harbor, Michigan, in and through the county of Wabash and the city of Wabash, Indiana; that in the city of Wabash, appellant, on February 24, 1926, and prior thereto, maintained a switch track extending from its main line of track in a curve to the northwest, across South Huntington street just south of the point where the named street and a bridge built therein crosses the Wabash River in the city of Wabash; that the track runs from the crossing referred to westwardly to sidings of the Wabash Canning Company and other factories, the nearest of which lies about one-third of a mile west of the point where the track crosses South Huntington street in the city of Wabash; that South Huntington street, from a point about one-eighth of a mile north of the center of the bridge above mentioned, is on an up grade proceeding southward to the middle of the Huntington street bridge, and, from that point downward to the crossing of the switch track of appellant across Huntington street; that South Huntington street was, on February 24, 1926, and prior thereto, a public highway, paved with asphalt and open to traffic of the public, either on foot or in conveyances; that the bridge was constructed with concrete banisters between three and four feet high on either side of the bridge, lamp posts, resting on the banisters, electrically lighted at night; that on the above named day, one Dwight Usher was driving his Buick automobile southward on Huntington street at about 9:30 P. M.; that in his car were two passengers, the appellee and her cousin; that the night was dark and a heavy rain was falling; that the lights from the lamp posts on the bridge were burning and were reflected up in the faces of the appellee and the other occupants of the car; that at the time the automobile owned and operated by Dwight

Usher was traveling toward the switch of appellant, as heretofore described, the employees of appellant, acting in the scope of their employment, "had moved a string consisting of a number of freight cars, on the east end of which a locomotive was attached, over the switch track" which crossed south Huntington street; that the freight cars were standing across the track and blockading and wholly obstructing the street and that the employees or train crew in charge of the locomotive and cars negligently stopped the car over and in such a manner as to obstruct the highway; that the employees knew, or by the use of reasonable care could have known, that it was highly dangerous to the public using the highway to permit the cars to remain standing on the crossing; that the train crew so employed by the appellant negligently failed to place any light on the highway on the north side of the cars as a signal to approaching vehicles and to warn the public of the dangerous situation; that as a result thereof, Dwight Usher drove the automobile in which the appellee was riding as a passenger southward toward the crossing and was within a very short distance of the freight cars before seeing the obstructions; that he was unable to stop his automobile, and the automobile struck the freight cars with great force, and bruised and crushed appellee.

In this case, the appellant did not present to the trial court a motion to make the complaint more specific and that the pleader be required to make the necessary allegations to sustain the several conclusions of fact contained therein as provided by §360 Burns 1926. In the absence of a motion to make more specific, all objections on account of the pleading of conclusions of fact are waived. *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314, 123 N. E. 409, 413.

The sixth division of §362 Burns 1926, which provides that the memorandum which is to be filed with the de-

murrer shall state "wherein such pleading is insufficient for want of facts, and the party so demurring shall be deemed to have waived his right to question the same for any defect not specified in such memorandum," has been given force and effect by the decisions of the Supreme and Appellate Courts. In consideration of the demurrer in this case, which rests solely on the ground that the complaint does not state facts sufficient to constitute a cause of action, we are confined to the facts pointed out by the memorandum "which are wanting in the pleading to make it sufficient on the theory upon which it is predicated." *State, ex rel.* v. *Morris, Mayor* (1927), 199 Ind. 78, 155 N. E. 198, 200, and, further, that all objections not contained in the memorandum filed with the demurrer are waived. *Amsbury* v. *Harper* (1928), 87 Ind. App. 119, 157 N. E. 292. We must also bear in mind that, "in construing a complaint where a demurrer is interposed, it will be deemed sufficient whenever the necessary allegations can be fairly gathered from all the averments, and all facts will be deemed stated that can be implied from the allegations made by a fair and reasonable intendment and facts so impliedly averred will be given the same force as if directly stated." *Fauvre Coal Co.* v. *Kushner, supra; James* v. *State Life Insurance Co.* (1925), 83 Ind. App. 344, 147 N. E. 533. We must also be cognizant of the several decisions of the Supreme and Appellate Courts that it is sufficient, as against a demurrer, in pleading negligence to allege that the defendant "negligently" did the act complained of without stating the particulars of the negligence or the circumstances which made it negligent. *Pittsburg R. R. Co.* v. *Simons* (1907), 168 Ind. 333, 79 N. E. 911.

Appellee evidently attempted by the several allegations of her complaint to charge as one of the acts of alleged negligence of appellant the violation of §2903 Burns 1926,

which reads as follows: "Whoever, being a conductor or other person having charge of, or running a railroad train, carrying or used for carrying freight, permits or suffers the same or any car or locomotive engine composing the same to remain standing across any public highway, street, alley or farm crossing, or who, whenever it becomes necessary to stop such train across any public highway, street, alley or farm crossing, fails or neglects to leave a space of sixty feet across such public highway, street, alley or farm crossing shall be fined not more than twenty dollars nor less than three dollars."

When the several allegations of a complaint, which is predicated on the theory of negligence flowing from the violation of a particular statute, are in the language of the statute, the pleading is sufficient unless the particular statute contains certain exceptions. If such exceptions exist, it is generally necessary for the pleader to negative the same. In the case of *Ezra* v. *Manlove* (1845), 7 Blackford, 389, the Supreme Court said: "It is a general rule that in asserting a right founded on a statute, the pleader should aver every fact necessary to inform the Court that his case is within it."

An examination of the several allegations contained in appellee's complaint fail to disclose that appellee has brought herself within the law in charging the violation of §2903 *supra*. The offense defined in the first part of the above mentioned section is in permitting the train or cars to *remain standing* across the street or public highway so as to prevent the use and enjoyment of the street or highway by the citizens, as a public thoroughfare. Momentarily stopping a freight train or cars on a public street, highway, etc., is not a violation of §2903 *supra*. The appellee, by the averments of her complaint, charges that the cars were "standing across." The allegations are not sufficient to allege a violation of §2903. *Cleveland R. R.* v. *Taurer*

(1911), 176 Ind. 621, 96 N. E. 758, 39 L. R. A. (N. S.) 20; *Becker* v. *State* (1904), 33 Ind. App. 261, 71 N. E. 288; *C. C. C. & I. R. R.* v. *Wynant* (1885), 100 Ind. 160.

The appellant asserts that §2903 *supra,* is "directly against the conductor or other person in charge of a train, and not against the railroad company, and that a violation of the statute might be made the basis of a criminal action against the conductor or other person in charge of the train or car, but that its violation could not be made the basis of a charge of negligence against the railroad company" and cites in support thereof *Killen* v. *N. Y. C. R. R.* (1928), 225 App. Div. 8, 232 N. Y. S. 76, 77; *Hendley* v. *Chicago & N. W. Ry. Co.* 1929), 198 Wis. 569, 225 N. W. 205, which support the above statement of appellant. However, our Supreme Court, in the case of *Cleveland R. R.* v. *Taurer, supra,* has taken a different view of the violation of the statute than advanced by appellant. It was held in the above case that when the complaint sufficiently alleges a violation of §2691 Burns 1908, which is the same as §2903 Burns 1926, and an injury and damage flow directly from such violation and produce or help to produce an injury, contributory negligence not being involved, the railroad company must respond in damages. See, also, *Chicago and Erie R. R.* v. *Hunter* (1917), 65 Ind. App. 158, 113 N. E. 772; *McCollum* v. *C. C. C. & St. L. R. R.* (1900), 154 Ind. 97, 55 N. E. 1024.

Appellee undertakes by the several allegations of her complaint to allege negligence other than a violation of a statute under the following rule of law: That it is negligence for the servants and employees of a railroad company in charge of a train to so place their cars over a public thoroughfare in such a manner as to block the same and cause an obstruction to exist which is dangerous without taking proper means to warn the public using the highway of such an obstruction when, on ac-

count of the darkness and physical conditions existing at the time, the servants and employees of the railroad company knew, or, in the exercise of reasonable care, should have known, that a person operating an automobile on the highway which was properly equipped with headlights, mechanically in good condition, and carefully operated, would be liable to collide with the railroad cars blocking the highway. *St. Louis R. R. Co.* v. *John Guthrie* (1927), 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; *Jacobson* v. *N. Y. S. & W. R. Co.* (1916), 87 N. J. Law 378, 94 Atl. 577; *Trask* v. *Boston & Maine R. R.* (1914), 219 Mass. 410, 106 N. E. 1022; *Philadelphia & R. R. Co.* v. *Dillon* (1921), 1 W. W. Har. (31 Del.) 247, 114 Atl. 62, 15 A. L. R. 894; *Gage* v. *B. & M. R. Co.* (1914), 77 N. H. 289, 90 Atl. 855, L. R. A. 1915A 363.

We are fully aware that, under the common law, "there is no positive duty to maintain a watchman or gates at a highway crossing in the absence of an ordinance or order of the Public Service Commission or other proper authority." *T. H. I. & E. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740. Nevertheless, it is the duty of the employees of the railroad company to exercise ordinary care in the operation of its trains, and failure to so exercise such care may constitute negligence. *C. & E. I. R. Co.* v. *Boggs* (1885), 101 Ind. 522, 51 Am. Rep. 761; *Pittsburgh C. C. & St. L. R. R. Co.* v. *Rushton* (1925), 90 Ind. App. 227, 148 N. E. 337, 341.

In this case, the jury returned a verdict for the plaintiff. We will concede, without deciding, that the complaint was not technically good, and proceed to a consideration of the evidence, for, "even though it was not technically good," because of failure to allege certain facts, if evidence was admitted without objection covering the deficiency existing in the complaint, and the case was fairly tried and determined on its merits, the overruling of the demurrer, even though

erroneous, would not constitute reversible error." *P. C. C. C. & St. L. R. R.* v. *Rushton, supra.*

A resume of the evidence favorable to appellee is as follows: The place of the accident was South Huntington street in the city of Wabash. As the name indicates, South Huntington street runs substantially north and south. It extends across the Wabash river, which runs through the city of Wabash in an easterly and westerly direction, to the south on a concrete bridge which spans the river. The bridge is 693 feet long, 29 feet wide, with banisters and electric lights, 14 in number, on the bridge, placed at each pier and on each side of the bridge at each end thereof. The lights were 10 to 12 feet above the ground surface of the pavement. The appellant maintains a switch track, called a "quarry" track, which intersects South Huntington street immediately south of the bridge on a curve to such an extent that the north rail of the switch track is 12.9 feet from the west side of the south end of the bridge and 21.26 feet from the east side of the south end of the bridge. The switch track is down grade to the west.

The track was used to serve a number of industries along the same, west of South Huntington street, and to store cars which appellant moved to the south from the city of Wabash. There was no crossing protection at the intersection of South Huntington street and the railroad.

On the night of February 24, 1926, the employees of appellant, an engineer, a fireman, a conductor and two helpers, were operating a switch train, which was standing on the quarry track, east and west of the South Huntington street crossing, heretofore described. The engine was equipped with a regular headlight on the front and an electric light on the rear of the tank, commonly called a "tail light," which were burning. The employees had operated the engine over the quarry track and had taken out several cars which were on the track west of the

Huntington street crossing and placed them elsewhere; the engine, with seven cars, returned on the quarry track and backed the train over the Huntington street crossing to couple up and take away the remaining cars on the quarry track stationed west of the named crossing; when the train backed over the crossing, a hopper car and a flat coal car, each painted black, were on the track in the highway; the conductor and brakemen moved west at that time to release the brakes on the cars west of the crossing so that the same could be moved elsewhere.

On the above named night, Dwight Usher, 22 years of age, accompanied by Miss Louise Gillespie, appellee, and Miss Ethel Barton, drove his Buick roadster, to the city of Wabash. All three, which included appellee, attended the theater. At about 9:15 or 9:30 P. M. they started home. The night was dark and it was raining very hard. They stopped at a gasoline station in Wabash and the conversation between Dwight Usher and the attendant at the filling station was to the effect that it was a bad night and one had "better be careful." They moved south on South Huntington street, which was paved with asphalt, toward the bridge which crosses the Wabash river as heretofore described. The named street was up grade until about the middle of the bridge. When Dwight Usher reached the middle of the bridge, his car was maintaining a speed of 15 miles per hour, which was increased thereafter to 25 miles per hour. His car equipped with good headlights and his windshield wiper was working. The lights on the bridge were burning and, as Usher drove on the bridge, the bridge lights "glared" and the effect of the glare blinded him; on account of the glare, he was unable to see very far ahead of his car and the "glare" continued during the entire time he drove his car over the bridge. When he first observed the coal car of the railroad train in the middle of the road, he was about 20 to 25 feet from the same; he then applied his

brakes, and turned his machine. He did not remember his automobile striking the car.

Dwight Usher was familiar with the railroad crossing south of the bridge, having passed over the same very often for many years; he knew the appellant used the quarry track in the daytime, but had never seen appellant operate its trains over the same at night. On the night in question, when his car reached the middle of the bridge, the cut-out was opened at the request of Miss Barton; he was aware at that time that the road was slippery on account of the rain which was falling and knew that he could not stop his car at the rate of speed he was traveling in a distance of 20 to 25 feet.

The appellee, was also familiar with the crossing. She did not admonish the driver about the weather conditions or of the fact that they were approaching the crossing. However, she was watching the road, but was unable to see very far in front of the car because of the physical conditions existing at the time.

Neither the appellee nor Dwight Usher observed any light of any kind as they approached the switch.

As heretofore stated, the train crew was in the act of causing the cars to be coupled and of releasing the brakes on the cars west of the crossing; the yard clerk was on the south side of the train checking the cars; while in the performance of his duties, he noticed an automobile coming from the south which he signaled with his lantern. Several members of the train crew saw the lights of Dwight Usher's machine as it came upon the bridge and heard the noise of his engine. The conductor stated that when he heard the noise of the engine, it sounded "exactly like the roar of an aeroplane" and he started toward the crossing, "because I knew it was an automobile and he couldn't make that crossing."

The train had occupied the crossing for a period of three minutes and the employees of the appellant were

engaged in a necessary operation of the train, coupling onto the freight cars standing west of the crossing and removing the cars to the main track.

The automobile of Dwight Usher collided with the gondola car; the appellee was severely injured and Miss Barton was killed.

No signal of any kind or warning by light or other means was given by the employees of the appellant to automobiles approaching the crossing on the north side of the train.

Is the evidence sufficient to warrant a finding by the jury that the employees of appellant violated §2903, *supra?*

The legislature has given to the railroad companies the right to construct their roads upon or across any public highway. See §12948, Burns 1926. Certain duties are required of a railroad when its tracks cross any street, avenue or alley in any incorporated town. The right so conferred necessarily implies that the railroad company is authorized to operate its locomotives engines, trains and cars on the tracks on and over such crossings, subject to such regulations as prescribed by the legislature, and with due regard for others whose rights are equal in the use of the "King's highway." *Jacobson* v. *N. Y. S. & W. R. Co., supra; Philadelphia & R. R. Co.* v. *Dillon, supra.*

According to the evidence of this case, the employees of appellant did not lease the train. The engine backed the cars over the crossing, and the employees proceeded, as shown by the evidence, to release the brakes in order that the cars might be moved. It was a necessary operation in the discharge of the business in which appellant was engaged. The whole operation had not exceeded three minutes before the accident happened. Certainly, it cannot be contended that three

minutes, under the facts of this particular case, would subject the employees to the penal provisions of §2903 *supra*. *Becker* v. *State, supra;* Words and Phrases (2d) 257; *Depow* v. *C. & N. W. R. Co.* (1912), 151 Wis. 109, 138 N. W. 42; See *Rexroth* v. *Holloway* (1909), 45 Ind. App. 36, 99 N. E. 87.

Again, is the evidence sufficient to charge the employees of appellant that ordinary prudence and foresight required that they should have placed a ▮ flagman or other person with a light on the north side of the railroad to warn the public that the cars were on the highway?

The evidence discloses that it was night time and a heavy rain was falling; that the cars were painted black; that the switch track was 15 to 20 feet from the end of the bridge and, at each end thereof, the roadway was lighted with electricity. It seems most reasonable that, under such facts, the employees of the railroad company had the right to presume that the driver of an automobile, properly equipped with lights as provided by §10129, Burns 1926, and driving carefully, would have seen the cars on the highway in time to have stopped his automobile before colliding with the car. *Trask* v. *B. & M. R. R.* (1914), 219 Mass. 410, 106 N. E. 1022; *McGlauflin* v. *B. & M. R. R.* (1918), 230 Mass. 431, 119 N. E. 955, L. R. A. 1918E, 790; *Gilman* v. *C. V. R. Co.* (1919), 93 Vt. 340, 107 Atl. 122, 16 A. L. R. 1102; *Gage* v. *B. & M. R. R., supra; Orton* v. *Pennsylvania R. Co.* (1925), (C. C. A. 6th), 7 Fed. (2d) 36.

It is true that the driver testified that the "glare" arising from the lights on the bridge obscured his vision from the instant he entered on the north end of the ▮ bridge. Can it be said that the employees of the railroad should have known that such a physical fact existed without a scintilla of evidence to that effect?

If we answer in the affirmative, then the railroad employees would be charged with every atmospheric condition arising by reason of the operation of natural or artificial conditions or a combination of same that would tend to obscure the vision of a driver of an automobile on approaching a railroad crossing.

Suppose, for instance, a locomotive pulling at least 100 coal cars traveling south in the night time, would be compelled to stop and take water, and the time consumed in performing the necessary act of filling the tender would be three minutes; that when the cars became stationary, at least three public thoroughfares would be blocked; that two of the thoroughfares were lighted by electricity on the east side, and one on the west side of the train; that it was raining heavy and each thoroughfare was paved with asphalt; that the rain, asphalt pavement, the stationary electric lights in connection with the lights of an approaching automobile produced a "glare" which obstructed the vision of the driver to such an extent that he could see only a few feet in front of his machine. Shall we say that the employees of the railroad, in the exercise of ordinary care, should know of the physical condition existing both on the east and west of the three separate crossings and proceed to give warning at each of the crossings? If we answer the question in the affirmative, it will be necessary for railroad companies to take such measures to guard the crossing, under the assumed conditions, as were not contemplated by the existing law of our State.

In the case of *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257, 260, 48 L. R. A. (N. S.) 834, the Supreme Court said: "Proximate cause is the act that immediately causes or fails to prevent an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred.

The test is to be found in the probable injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring such consequences about." And the Supreme Court, in the case of *Cincinnati R. R.* v. *Armuth* (1913), 180 Ind. 673, 103 N. E. 738, approved the definition of proximate cause in *Balzer* v. *Waring, supra.*

Usher testified that the "glare" which existed the moment he entered the bridge and remained with him continuously as he passed over the bridge made it difficult to see ahead; that he did not see the car until he was within 28 feet of the same; that he was unable to stop his automobile within the range of his vision; that he increased his speed when he reached the center of the bridge from 15 to 25 miles per hour.

Section 10140, Burns 1926, reads in part as follows: "No person shall drive or operate a motor vehicle . . . upon any public highway in this State at a speed greater than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or limb or injure the property of any person."

It was negligence, as a matter of law, for Usher to drive his automobile, with his vision obscured in the manner and to the extent as shown by the evidence, at such a speed that he could not stop his automobile within the distance that objects could be seen ahead of it. *Ruth* v. *Vroom* (1928), 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528; *Hoffman* v. *S. P. Co.* (1927), 84 Cal. App. 337, 258 Pac. 397; *Spencer* v. *Taylor* (1922), 219 Mich. 110, 188 N. W. 461; *Lett* v. *Summerfield* (1927), 239 Mich. 699, 214 N. W. 939; *Lauson* v. *Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30; *Fannin* v. *Minneapolis* (1924), 185 Wis. 30, 200 N. W. 651; *Toledo T. R. Co.* v. *Hughes* (1926), 115

Ohio St. 562, 154 N. E. 916; *West Construction Co.* v. *White* (1914), 130 Tenn. 520, 172 S. W. 301; *Heiden* v. *Minneapolis St. R. Co.* (1922), 154 Minn. 102, 191 N. W. 254; *Fisher* v. *O'Brien* (1917), 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F 610; *Nikoleropoulos* v. *Ramsey* (1923), 61 Utah 465, 214 Pac. 304; *Serfus* v. *Lehigh & N. E. R. Co.* (1921), 270 Pa. 306, 113 Atl. 370, 14 A. L. R. 791; *Gallagher* v. *Montpelier & W. R. R.* (1927), 100 Vt. 299, 137 Atl. 207, 52 A. L. R. 744; *Webster* v. *Pollock* (1921), 15 Ohio App. 102; *Roth* v. *Blomquist* (1928), 117 Neb. 444, 220 N. W. 572; *Albertson* v. *Ansbacher* (1918), 102 Misc. Rep. 527, 169 N. Y. S. 188; *Ebling* v. *Nielsen* (1920), 109 Wash. 335, 186 Pac. 887; *Kelly* v. *Knabb* (1924), (D. C.), 300 Fed. 256; *Phillips* v. *Davis* (1925), (C. C. A.), 3 Fed. (2d) 789, 40 A. L. R. 1241; *Yano* v. *Stott Briquet Co.* (1924), 184 Wis. 492, 199 N. W. 48. If Usher's lights were unable, on account of the physical conditions encountered, to delineate an object in the roadway straight ahead a distance prescribed by law, to-wit: 200 feet, then he should have adopted such a rate of speed that he could have brought his automobile to a stop within the distance that he could plainly see the train of appellant and so avoid running his machine into the car. *St. Louis-San Francisco R. R.* v. *Guthrie* (1927), 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; *P. & R. R. R.* v. *Dillon, supra,* and this Usher failed to do.

The evidence presents a situation as far as appellant is concerned of furnishing a condition unattended by negligence on its part, by which the injury to appellee was caused by the subsequent independent act of Usher, and, in such case, the existence of the condition was not the proximate cause of appellee's injuries. *Orton* v. *P. R. Co., supra; Bruening* v. *Miller* (1930), 57 S. D. 58, 230, N. W. 754; *Enochs* v. *Pittsburgh, etc., Ry. Co.* (1895), 145 Ind. 635, 44 N. E. 658.

The language used in the case of *Orton* v. *P. R. Co.*, *supra,* is applicable and we quote therefrom as follows: "The most that can be said for plaintiff is that defendant created a situation in which Inman's negligence operated to bring about the collision, which would have been true if the train had occupied the crossing only while passing over it. Defendant's act was merely a condition and in no sense a concurring proximate cause of the injury."

In the case of *Gage* v. *B. & M. R. R.*, *supra,* the court said: "While the question of proximate cause, including the question of the defendant's duty of anticipating or foreseeing that the result might naturally happen, is ordinarily one of fact for the jury, this rule is necessarily subject to the limitation affecting the submission of all questions of fact to the jury: That if on the evidence reasonable men can come to only one conclusion, there is no question for their decision. . . . And when, as in this case, it cannot be said that the defendant was chargeable with knowledge that for some undisclosed cause an automobile was likely to run into its train on the crossing, the jury is not permitted to find that the defendant's act or omission to act was the cause of the plaintiff's injuries. 'From the fact of injury no presumption arises as to the guilt or innocence of either party.' . . ."

We conclude that the verdict of the jury is not sustained by sufficient evidence and is, therefore, contrary to law.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

### DISSENTING OPINION.

REMY, J., Dissenting.—I concur in the principal opinion except the holding that, under the facts and circumstances as shown by the evidence, the employees of appel-

lant in blocking the highway as they did, without giving any warning to travelers upon the highway, were in the exercise of reasonable and ordinary care and that the proximate cause of appellee's injuries was the negligence of the driver of the automobile. The crossing was blocked for three minutes, which in these days of travel by automobile is very different from the blocking of a highway against travelers in horse-drawn vehicles. The crossing was over a switch track which, as appellee and the operator of the automobile knew, was not in such general use as was the main track. The night was dark and rainy, and the freight car which stood across the highway was black, and, under the evidence, must have been approximately the same color as the sky; and, when the automobile in which appellee was riding as a guest was passing over the bridge toward the crossing, a person seated in the automobile and looking ahead down the highway would not readily, if at all, have seen the black car against the black clouds. When the freight train was stopped to remain across the highway for at least three minutes, the men in charge of the train knew that automobiles one or two miles away would, if approaching, arrive before the crossing would be cleared; they knew of the rain and the darkness; they knew the color of the car or cars which lay across the highway; they knew the unusual conditions and of course knew the danger. I am not impressed with the argument advanced by the illustration in the principal opinion; that is, the imaginary case of a freight train blocking three or four street crossings when it has stopped to take water. If a railroad company has a water station so located that a freight train when stopped for water will block several street or highway crossings, it has picked a poor location for its water station. Certainly, a railroad company could not so locate its water station, and

then successfully plead that it would be impossible to guard all the crossings blocked.

The driver of the automobile was proceeding at the rate of twenty-five miles an hour as he approached the crossing, and was looking ahead. He may have been, and doubtless was, misled by the unusual circumstance of the black freight car which did not reflect the light which would have made an ordinary freight car visible, and may thereby have been led to believe that nothing was in the way. It certainly is not the law that an operator of a motor vehicle on a public highway must always, at his peril, so drive as to discover every unguarded obstruction or excavation in time to stop his car in time to avoid danger; there are some things he has a right to assume.

Whether, under the evidence in this case, the trainmen exercised reasonable or ordinary care in blocking the highway for three minutes without warning travelers on the highway was, in my opinion, a question of fact for the jury; likewise the question as to the proximate cause of appellee's injuries.