## PENNSYLVANIA RAILROAD COMPANY *v.* HUSS

[No. 13,405.   Filed May 6. 1932.   Rehearing denied October 6, 1932. Transfer denied February 22, 1933.]

*Parker, Crabill, Crumpacker & May, George N. Beamer* and *Woodson S. Carlisle,* for appellant.

*Harris & Harris* and *Atkinson & Husselman,* for appellee.

BRIDWELL, C. J.—Appellee instituted this action against appellant, to recover damages for personal injuries sustained by her in a collision between an auto-

mobile in which she was riding as a guest and a freight car standing on appellant's railroad, and across a public highway at LaOtto, Noble County, Indiana.

An amended complaint was filed by appellee and an answer thereto in general denial formed the issue upon which the cause was submitted to the court and a jury for trial. Interrogatories were submitted to and answered by the jury. Verdict returned in favor of appellee for the sum of $22,500.00. Appellant filed its motion for judgment in its favor upon the interrogatories to the jury, and the answers thereto, notwithstanding the general verdict, which motion was overruled, and appellant excepted. Motion for a new trial was filed by appellant, which motion was overruled by the court and exception taken by appellant. Judgment rendered on verdict from which judgment this appeal is prosecuted.

The errors relied upon for reversal are as follows: (1) Error in overruling appellant's motion for judgment in its favor on the interrogatories propounded to the jury and the answers thereto; (2) error in overruling appellant's motion for a new trial.

The particular causes stated in the motion for a new trial, upon which appellant predicates error are: that the verdict of the jury is not sustained by sufficient evidence; that such verdict is contrary to law; that the court erred in giving to the jury each of certain instructions given, and, in refusing to give to the jury each of certain other instructions tendered by the appellant.

The amended complaint alleges negligence in three particulars as follows: (1) That appellant and its conductor carelessly and negligently permitted one of its cars carrying, or used for carrying freight, to remain standing across a public highway and failed and neglected to leave any space whatever across said public highway; (2) that appellant negligently and carelessly

failed to place any signal of any kind or character whatsoever at said crossing, and (3) that appellant carelessly and negligently failed to station or place any one of its employees or other person or persons at said crossing to warn the travelers upon said highway of the obstruction of the same by said freight car.

The sufficiency of the evidence to sustain the verdict is questioned. Many of the facts necessary to be considered are established by testimony that is not controverted. Facts proven and not in dispute are as follows: Appellant's railroad extends practically east and west through LaOtto, an unincorporated town in Noble County, Indiana, and is intersected there by a public highway, commonly known as the Lima Road which runs north and south from Kendallville to Fort Wayne; approximately 400 feet east of this intersection the tracks of the Grand Rapids & Indiana Railroad Company also intersect appellant's tracks at nearly a right angle; an interlocking device is maintained and used by appellant and the G. R. & I. in the operation of their trains at this section, and it is necessary in the proper operation of said railroads that no cars be left within the interlocking plant; about 400 feet west of the Lima Road another public highway intersects appellant's tracks; the Lima Road is of concrete formation to a width of 18 feet; east of this highway and adjacent thereto is a garage located about 100 feet south from the center line of appellant's tracks; at a point 200 feet south of the railroad track the roadway of the Lima Road is approximately one and a fourth feet lower than the top of the rail of appellant's track and 400 feet south one foot lower; south of said intersection there is no building on the west side of said highway for a distance of 300 or 400 feet. On the 21st day of October, 1927, at approximately one o'clock A. M. a freight train of appellant consisting of an engine, caboose and 29 freight cars was running eastward and 10

of the cars in said train were to be set off at LaOtto; this train, as it entered LaOtto, was, upon signal of the conductor, stopped with the 13th car from the engine standing across the Lima Road; the conductor and head brakeman were riding on the caboose and when the train stopped, alighted therefrom for the purpose and with the intention to "cut" the train behind the 16th car from the engine in order to set the 10 cars off at LaOtto, and, (according to the jury's answer to interrogatory 33 submitted), acted with "reasonable promptness in leaving the caboose and going to the place where the train was to be cut;" before the train was separated and the crossing cleared an automobile in which appellee was riding as a guest, and which was being driven by one Emma Menzel approached over the Lima Road from the south and collided with the freight car standing across said highway and appellee received serious injuries; the freight car was a gondola car and about eight feet high from the rail; the automobile was a two seated Chrysler Sedan owned by one Dr. Kreigh. On the evening of October 20th, the doctor made a trip to Fort Wayne and appellee and Miss Menzel, at his invitation, accompanied him, leaving Kendallville about eight o'clock and driving south over the Lima Road through LaOtto to a dance hall about three miles from Fort Wayne where the two young ladies stopped and Dr. Kreigh proceeded to Fort Wayne, thereafter returning to the hall about midnight, when appellee and Miss Menzel again became passengers in the automobile and the three then went to a restaurant in Fort Wayne for something to eat and afterwards started back to Kendallville, the doctor driving the car for three or four miles, and then, at his requeset, he exchanged places with Miss Menzel who thereafter did the driving until the collision occurred; all three rode in the front seat, appellee sitting to the right, the doctor between the two ladies; appellee's testimony is that the

automobile was equipped with bright lights which were turned on all the time and that after Miss Menzel began driving she noticed the speedometer at times and the speed was approximately 35 miles an hour; that before reaching LaOtto on the return journey they passed some automobiles going in the same direction they were traveling and met others; that as they entered LaOtto the speed slackened a little; that she was looking ahead and saw nothing in the roadway; that all at once she saw something just vague ahead and just then Dr. Kreigh cried "Look out" and grabbed the emergency brake and Miss Menzel pressed her feet on the brakes and that was all she saw and the last she remembers as to what occurred; the automobile struck the freight car and, following the collision, the front end of the frame and the bumper of said automobile were under the freight car, and the radiator and hood were pushed back, both ends of the hood going through the windshield; at the time of the collision no signal light of any kind was maintained at the crossing, and there were no gates or watchman; the Lima Road was a much traveled highway and appellant knew of this fact; just before the collision the conductor in charge of the freight train and the head brakeman had reached the 16th car west from the engine and the conductor was in the act of pulling the pin to cut the train when he noticed the automobile in which appellee was riding approaching from the south and some three or four hundred feet distant from the crossing and both he and the brakeman started toward the crossing waving their lanterns and trying to attract the attention of the driver of the automobile, but appellee did not see them; no employee of appellant was stationed at the crossing to warn travelers that same was obstructed.

There is evidence that the night was cloudy; that it was a dark night, cool and damp; that at the scene of the accident there was a fog or mist and that the visibility

was poor. The evidence as to atmospheric conditions and the speed of the automobile as it approached the crossing is conflicting, but a careful examintion of the record discloses no conflict as to the other material and controlling facts proven.

From the allegations of the amended complaint it is evident that one of the acts of negligence charged and relied upon by appellee is the alleged violation by appellant of section 2903, Burns R. S. 1926, which provides as follows: "Whoever, being a conductor or other person having charge of, or running a railroad train, carrying, or used for carrying, freight, permits or suffers the same, or any car or locomotive engine composing the same, to remain standing across any public highway, street, alley or farm crossing, or who, whenever it becomes necessary to stop such train across any public highway, street, alley or farm crossing fails or neglects to leave a space of sixty feet across such public highway, street, alley or farm crossing, shall be fined not more than twenty dollars nor less than three dollars."

The purpose of this statute is to prevent delay in traffic using our avenues of travel at points where railroads intersect such avenues, and to keep open such ways of communication in order that any person, or persons, desiring to use the same may do so without unreasonable interference. It was not enacted in order to protect persons from damage to either person or property occasioned by collision with a car or cars necessarily obstructing a highway for a reasonable time. *Cleveland, etc., R. Co.* v. *Tauer* (1911), 176 Ind. 621, 96 N. E. 758, 39 L. R. A. (N. S.) 20.

The Legislature has given to railroad companies the right to construct and maintain their tracks across public highways. (Sec. 12931, Burns R. S. 1926.) This right carries with it by necessary

implication the right to operate trains on said tracks and on and over such crossings, subject to such regulations as prescribed by the Legislature, and with due regard to the rights of others using the highways with which such tracks intersect.

Negligence is also charged on account of appellant's failure to place any signal at the crossing and in failing to station some employee there to warn persons using the highway of its obstruction by the train.

There is no statute of this state requiring a railroad company, while its train, or any part thereof is occupying a highway crossing, either in passing thereover or when standing thereon, to station an employee at any such crossing to warn travelers on the highway that the road is obstructed by a locomotive, freight car, or other car, forming a part of such train, and no such duty is imposed by the common law, unless ordinary care would require that such action be taken. It would seem to be true that an object as large as a freight car would of itself, under ordinary conditions, be sufficient notice of its presence to warn any person using the highway with ordinary care that the highway was obstructed, and that it would not be necessary to have an employee present to call to the attention of travelers such fact. The primary purpose of signals, gates, other devices, and of watchmen when required to be maintained at points where railroad tracks intersect highways, streets, etc., is to warn persons traveling on and over such ways that a train is approaching and to protect them from damage or injury likely to ensue if they attempt to use such crossing before the train passes thereover. Common knowledge and experience is sufficient to warn that the crossing can not be used when already occupied, and the law does not require that information be given of an existing fact that ordinary observation will disclose.

The statute heretofore quoted expressly recognizes the right of a railroad company in the operation of its trains to stop any train, when necessary, with a car or cars forming a part thereof standing across a public highway, street, alley or farm crossing, but makes it unlawful to "permit or suffer" any part of a train to *remain standing* across any such ways of travel, and it is well settled that the violation of a statute is negligence *per se*. *Union Traction Co.* v. *Wynkoop* (1926), 90 Ind. App. 331, 154 N. E. 40; *Cleveland, etc., R. Co.* v. *Tauer, supra; Central Ind., etc., R. Co.* v. *Wishard* (1917), 186 Ind. 262, 114 N. E. 970.

It is also true that before a recovery of damages can be had it must be shown that the negligence charged produced or helped to produce the injury for which compensatory damages is sought. The injury and damage must flow directly from the negligence as a natural and probable result of the wrongful act, unaffected by the contributory negligence of the injured party. Damages which may be recovered are such as might reasonably be anticipated, and must be the natural and probable effect of such act. Unless such negligence is a proximate cause of the injury there can be no recovery. *McGahan* v. *The Indianapolis Gas Co.* (1894), 140 Ind. 335, 37 N. E. 601, 602, 29 L. R. A. 355, 49 Am. St. Rep. 199; *Claypool* v. *Wigmore* (1904), 34 Ind. App. 35, 71 N. E. 509; *Cleveland, etc., R. Co.* v. *Clark* (1912), 51 Ind. App. 392, 97 N. E. 822; *Sarber* v. *City of Indianapolis* (1920), 72 Ind. App. 594, 126 N. E. 330, 333.

Can it be said upon a consideration of the evidence in this case, that appellant in the exercise of ordinary care should have anticipated that, in the natural course of events and according to common experience, the driver of some automobile using the highway which intersects its railroad tracks would or might attempt to cross over the tracks at a time when the same

was occupied by a freight car forming a part of one of its trains? Was there any negligence charged in the complaint and proven by the evidence that was a proximate cause of appellee's injuries? We are of the opinion that these questions must be answered in the negative. Certainly it can not be reasonably said that it is usual for the driver of an automobile traveling over the highways of this state to run into a freight train standing over a crossing; or, that such an event is likely to occur.

Our Supreme Court, in *Balzer* v. *Waring* (1911), 176 Ind. 585, 95 N. E. 257, 260, 48 L. R. A. (N. S.) 834, said: " 'Proximate cause' is the act which immediately causes or fails to prevent an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences which were to be anticipated, and not in the number of subsequent events or agencies which might arise to bring such consequences about." See also *Cincinnati, etc., R. Co.* v. *Armuth* (1913), 180 Ind. 673, 103 N. E. 738.

Here we have an independent intervening act which was the direct and immediate cause of the injury and which was in no way brought about or caused by any act of appellant.

The laws of this state impose upon travelers driving motor vehicles over our public highways certain duties among which is the duty to carry two lighted lamps on the front of such vehicle, during the period from one-half hour after sunset to one-half hour before sunrise, which lights shall throw sufficient light ahead to render any person or object upon the roadway straight ahead of such motor vehicle visible for a distance of at least two hundred feet. (Sec. 10129, Burns R. S. 1926). It is also provided by statute that: "No person shall drive or operate a motor vehicle . . . upon any public high-

way in this state at a speed greater or less than is reasonable or prudent, having regard to the width of the highway, the density of the traffic, the condition of the weather and the use of the highway, or so as to endanger the life or the limb or injure the property of any person." Sec. 10140, Burns Supp. 1929; Acts 1927, p. 62, ch. 230.

It was negligence as a matter of law for Miss Menzel to drive the automobile in which appellee was riding, at such a speed that she (Miss Menzel) could not stop the same within the distance that objects could be seen ahead of it. If the light on said vehicle, on account of physical conditions encountered, would not delineate an object in the roadway straight ahead the distance prescribed by law then she should have driven such automobile at such a rate of speed that she could have brought it to a stop within the distance that she could plainly see the train of appellant ahead of her, and thus have avoided running the automobile into the freight car. *Cleveland, C. C. & St. L. Ry. Co.* v. *Gillespie* (1933), post 535, 173 N. E. 708, 715; *Ruth* v. *Vroom* (1928), 245 Mich. 88, 222 N. W. 155, 62 A. L. R. 1528; *Hoffman* v. *S. P. Co.* (1927), 84 Cal. App. 337, 258 Pac. 397; *Spencer* v. *Taylor* (1922), 219 Mich. 110, 188 N. W. 461; *Lett* v. *Summerfield* (1927), 239 Mich. 699, 214 N. W. 939; *Lauson* v. *Fond du Lac* (1909), 141 Wis. 57, 123 N. W. 629, 25 L. R. A. (N. S.) 40, 135 Am. St. Rep. 30; *Fannin* v. *Minneapolis, etc., R. Co.* (1924), 185 Wis. 30, 200 N. W. 651; *Toledo T. R. Co.* v. *Hughes* (1926), 115 Ohio St. 562, 154 N. E. 916; *West Construction Co.* v. *White* (1914), 130 Tenn. 520, 172 S. W. 301; *Heiden* v. *Minneapolis St. R. Co.* (1922), 154 Minn. 102, 191 N. W. 254; *Fisher* v. *O'Brien* (1917), 99 Kan. 621, 162 Pac. 317, L. R. A. 1917F, 610; *Nikoleropoulos* v. *Ramsey* (1923), 61 Utah 465, 214 Pac. 304; *Serfas* v. *Lehigh & N. E. R. Co.* (1921), 270 Pa. 306, 113 Atl. 370, 14 A. L. R. 791; *Gallagher* v. *Montpelier & W. R. R. Co.* (1927), 100 Vt. 299, 137 Atl. 207, 52 A. L. R.

744; *Webster* v. *Pollock* (1921), 15 Ohio App. 102; *Roth* v. *Blomquist* (1928), 117 Neb. 444, 220 N. W. 572; *Albertson* v. *Ansbacher* (1918), 102 Misc. Rep. 527, 169 N. Y. S. 188; *Ebling* v. *Nielsen* (1920), 109 Wash. 355, 186 Pac. 887; *Kelly* v. *Knabb* (1924), (D. C.) 300 Fed. 256; *Phillips* v. *Davis* (1925), (C. C. A.), 3 Fed. (2d) 798, 40 A. L. R. 1241; *Yano* v. *Stott Briquet Co.* (1924), 184 Wis. 492, 199 N. W. 48; *St. Louis-San Francisco R. Co.* v. *Guthrie* (1927), 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110; *Philadelphia & R. R. Co.* v. *Dillon* (1921), 1 W. W. Har. (31 Del.) 247, 114 Atl. 62, 15 A. L. R. 894; *Orton* v. *P. R. Co.* (1925), (C. C. A.) 7 Fed. (2d) 36; *Bruening* v. *Miller* (1930), 57 S. D. 58, 230 N. W. 754.

In *Sarber* v. *City of Indianapolis, supra,* the court quotes with approval from Ray in Negligence of Imposed Duties (Passengers), pages 669, 670, as follows: "Where the concurring cause is the independent, wrongful act of a responsible person, such act arrests causation, being regarded as the proximate cause of the injury, the original negligence being considered merely as the remote cause. As, in the law, it is the proximate and not the remote cause which is regarded, he who is guilty of the original negligence is not chargeable, but redress must be sought from him who directly caused the injury. . . . In civil cases a defendant is not responsible for results, except such as are natural, proximate, and direct, if such consequences are caused by the acts of others, so operating on his act as to produce the injurious consequences, then he is not liable."

In *McGahan* v. *Indianapolis Nat. Gas Co., supra,* the court said: "The rule that an intervening responsible agent cuts off the line of causation from the original negligence has been many times recognized by this court."

We are of the opinion that the sole proximate cause of the injury in this case, as disclosed by the uncontro-

verted evidence, was the negligence of the driver of the automobile in which appellee was riding, in driving said vehicle into and against appellant's freight car. At most it can only be said that appellant, by permitting its freight car to remain standing on said crossing, created an unconcealed condition in which Miss Menzel's negligence operated to bring about the collision. Considering the undisputed evidence we can not escape the conclusion that the injury to appellee was caused by the subsequent independent act of the driver of the automobile, and that the condition created did not in any manner cause or contribute to the negligence of such driver.

In the case of *Cleveland, C. C. & St. L. Ry. Co.* v. *Gillespie, supra,* this court quotes from *Gage* v. *Boston & Maine R. Co.,* (1914), 77 N. H. 289, 90 Atl. 855, L. R. A. 1915A 363 as follows: "While the question of proximate cause, including the question of the defendant's duty of inticipating or foreseeing that the result might naturally happen, is ordinarily one of fact for the jury, this rule 'is necessarily subject to the limitation affecting the submission of all questions of fact to the jury: That if on the evidence reasonable men can come to only one conclusion, there is no question for their decision.' . . . And when, as in this case, it cannot be said that the defendant was chargeable with knowledge that for some undisclosed cause an automobile was likely to run into its train on the crossing, the jury is not permitted to find that the defendant's act or omission to act was the cause of the plaintiff's injuries. 'From the fact of injury no presumption arises as to the guilt or innocence of either party.'" See also, *Chicago, etc., R. Co.* v. *Mitchell* (1914), 56 Ind. App. 354, 105 N. E. 396; *Engle, Admr.,* v. *Dir. Gen. Railroads* (1922), 78 Ind. App. 547, 133 N. E. 138; *Phillips* v. *Jackson, Rec.* (1925), 83 Ind. App. 135, 147 N. E. 818; *Pittsburgh, etc., R. Co.* v. *Seivers* (1903), 162 Ind. 234, 67 N.

E. 680,.70 N. E. 133; *Evansville, etc., R. Co.* v. *Berndt* (1909), 172 Ind. 697, 88 N. E. 612.

The verdict of the jury is not sustained by sufficient evidence and is therefore contrary to law and the court erred in overruling appellant's motion for a new trial.

Other alleged errors are presented but in view of the decision reached, they need not be considered.

Judgment reversed with instructions to sustain the motion for a new trial.