GILLIES, BY NEXT FRIEND, ETC. *v.* NEW YORK CENTRAL RAILROAD COMPANY.

[No. 18,473. Filed January 8, 1954. Rehearing denied February 5, 1954. Transfer denied April 1, 1954.]

384

*Kizer & Neu* and *Tom R. Huff,* of Plymouth, for appellant.

*Church & Chester,* of Elkhart, and *Farabaugh, Chapleau & Roper,* of South Bend, for appellee.

ACHOR, J.—This action was brought to recover damages for personal injuries sustained by the appellant, Kenneth Gillies, as a result of a collision between appellant's automobile and a train of the appellee at a railroad crossing of appellee's tracks and Indiana State Highway No. 23, near the town of Walkerton, in St. Joseph County, Indiana.

The issues were formed by a second amended complaint of the appellant to which the appellee addressed a demurrer. The court sustained appellee's demurrer. The appellant refused to amend his complaint or plead further and the court rendered a judgment that the appellant take nothing by his action.

The essential allegations of the complaint are that on the date of the collision and for several years prior thereto the appellee railroad company operated a railroad consisting of a main track and a switch track near the northerly limits of the town of Walkerton, Indiana, and across State Road 23. That at said crossing the defendant railroad, on the 25th day of October, 1946, and for a period of approximately two years prior thereto, maintained an automatic flasher signal equipped with red lights on each side of said crossing; that the lights on said automatic flasher signal became illuminated whenever a train was approaching the crossing on the main track, while it was crossing the intersection or standing on said crossing; that said signal was erected and maintained to warn travelers on said State Road 23 of the approach of a train and of the presence of a train standing on or crossing said intersection; that on the post on which said flasher lights were mounted was a sign with these words: "TWO TRACKS—STOP ON RED SIGNAL."

That on the above date, at about 12:30 A.M., the appellant was driving a 1947 Studebaker Champion automobile northward from Walkerton, Indiana, on said State Road 23, towards the City of South Bend, Indiana; that the night was very dark and a light rain was falling at the time above stated; that at said time and place the defendant, through its employees, caused a freight train to stop on said railroad crossing, on the track heretofore designated as the switch or passing track; that said appellee negligently permitted said train, which consisted of oil tank cars painted black

in color and which were invisible to approaching automobiles on the highway, to stand across said crossing without having a flagman from said train to warn travelers of the presence of said train on said crossing.

Appellant also alleged that the appellee so constructed and maintained its flasher signals at said crossing in such a manner that said flasher signals operated and showed red only when trains were on the main track and did not operate and flash a red signal when a train was approaching or occupying the passing or switch track at said crossing; that the plaintiff was familiar with said crossing and at all previous times, when he approached said crossing and a train was approaching said crossing or was across said crossing, the red flasher signals were working, to warn travelers on the highway of the presence or the approach of a train at said crossing; that the plaintiff at no previous time ever observed, while approaching said crossing, any train either on said crossing or approaching it when the red flasher signals were not working, to warn travelers upon said highway; that appellant had no knowledge of the arrangement whereby the red flasher signals worked only when trains were on the main track of said railroad; that as the appellant approached said crossing he was driving his said automobile at a reasonable rate of speed and was keeping a lookout ahead for traffic and trains on said crossing; that, in the exercise of reasonable care, he was not able to see the black tank cars standing on said crossing in the absence of any warning of its presence, in sufficient time to stop his automobile without colliding with said train.

That in addition to the care exercised by the appellant in approaching said crossing as heretofore alleged, the appellant, in part, relied upon the fact that no flasher lights were burning to indicate to him that a train was approaching or presently occupying said

crossing; that the appellee negligently and carelessly caused a condition to exist which misled the public and particularly the appellant in believing that the flasher signal would operate to warn travelers on said highway of the approach or the presence of any train at said crossing. That the appellant, in part, relied upon said conditions and had no knowledge whatsoever but that said flasher signals operated at all times to warn travelers of the approach of, or presence of, any train at said crossing.

Three primary questions are presented by the above allegations:

1. Do the averments of fact show negligence on the part of the railroad company?

2. Was that negligence, if any, the proximate cause of appellant's injury?

3. Do the facts alleged show contributory negligence on the part of appellant as a matter of law?

The law is well settled that railroads are under no positive common law duty to maintain flagmen at their crossings or to install a light, signal or warning of any kind to indicate that a train is occupying the same, unless ordinary care would require that such action be taken because of the extra hazardous character of the crossing. *C. C. C. & St. L. Ry. Co.* v. *Gillespie* (1930), 96 Ind. App. 535, 173 N. E. 708; *Pennsylvania Railroad Co.* v. *Huss* (1932), 96 Ind. App. 71, 180 N. E. 919; that the primary purpose of signals, gates and other devices, and of watchmen, when required to be maintained, is to warn persons traveling upon intersecting highways that a train is *approaching*; that under ordinary circumstances, common knowledge and experience is sufficient to warn that a crossing cannot be used when already occupied. *C. C. C. & St. L. Ry. Co.* v. *Gillespie, supra; Pennsylvania Railroad Co.* v. *Huss, supra; New York Central R. R. Co.* v. *Casey* (1938), 214 Ind. 464, 14 N. E. 2d 714; *Killion* v. *Chi.,*

*Milw., St. Paul & Pac. R. R.* (1940), 107 Ind. App. 527, 25 N. E. 2d 647; *Louisville & N. R. Co.* v. *Revlett* (1946), 224 Ind. 313, 325, 65 N. E. 2d 731.

It is not alleged that the intersection here involved was extra hazardous or that there was any rule or regulation by a properly constituted authority requiring that flagmen be stationed, or mechanical flashers be installed, at the intersection. Therefore, such failure would not in itself be negligence which would render appellee liable. *Pennsylvania R. Co.* v. *Rizzo* (1949), 119 Ind. App. 505, 86 N. E. 2d 91, 87 N. E. 2d 885. Therefore, negligence, if any on the part of appellee, must be related not to the mere failure of the appellee company to provide a signal, warning appellant of the presence of its train on the crossing, but such negligence must be related to the manner of installation and operation of the flasher signal which appellee voluntarily installed, and the manner in which appellee posted the intersection.

The general rule with regard to the duty of a railroad which installs signals, etc., at its crossing, has been stated in Vol. 75, p. 61, §792, C. J. S., as follows:

> "Where a railroad company maintains a flagman, gates, or other signals or warnings at a railroad crossing, whether voluntarily or as required by law, the general public has a right to presume that these safeguards will be reasonably maintained, attended and operated and, in the absence of knowledge to the contrary, the fact that the gates are not open or the automatic bells or lights are not signalling, or the flagman is absent from his post, or if present, is not giving a warning of danger, is some indication or assurance of safety, and an implied invitation to cross on which a traveler familiar with the crossing may rely and act within reasonable limits on the presumption that it is safe for him to go on the crossing."

The first question this court is required to determine is whether, admitting the facts alleged as true, the

appellee was guilty of negligence in the manner in which it operated its flasher signals and posted the crossing. In other words, did appellee, by installing flasher signals at the intersection in such a manner that they operated when trains were approaching and were upon only one of its two tracks and by also posting a sign on said flasher signal to read "Two Tracks—Stop on Red Signal," thereby extend a false assurance of safety and an implied invitation for persons traveling upon said highway to proceed into the intersection whenever the "red signal" was not flashing? As far as we are able to determine, this particular issue has not heretofore been adjudicated under the factual situation with which we are here confronted. However, in the case of *Louisville & N. R. Co.* v. *Revlett, supra,* the Supreme Court of this state had before it the circumstances where an automobile was driven into a train standing across the intersection and damages were asked by an injured guest of the automobile. In that case the court enunciated principles which, if not controlling, are highly persuasive of the issues before us. In that case the court stated:

"In the present case the evidence establishes that the appellee was familiar with the crossing in question and had been for a great many years, and that he knew of the wig-wag signal system and the red flashing light. There was evidence that the lights were not working and that the same had not been working for a period of about two weeks and had said lights been operating, the same could have been seen by the appellee through the fog, and that the train could not be seen for the fog. Under these circumstances and from the other evidence in the case, the jury might well infer that the failure of said red lights to operate should have been known by the appellant and was an *invitation to appellee to cross the track,* and that such failure was the proximate cause of the injury. *Louisville & N. R. Co.* v. *Chas. S. Mahoney, supra.* All the *other circumstances,*

> *such as the speed with which the automobile approached the crossing, whether or not appellee could have heard the gong sounding, or was justified in relying on said light working; and what, if any, precautions the appellee should have taken for his own safety, were questions properly submitted to the jury* and for them to decide. Both sides agree that the jury by its general verdict found that the proximate cause of the accident was the failure of the red flasher to work in the signal; this it had a right to do." (Our italics.)

It is true that the facts in the Revlett case, *supra,* and the case before us are distinguishable in that the alleged negligence in the case at bar was the failure to properly install its flasher equipment, whereas the negligence in the Revlett case was failure to keep the signals in repair after once having been placed in operation. However, in each case the underlying principle upon which negligence was grounded was the "invitation to cross the tracks," the false assurance of which was of such a character that it might cause a reasonably prudent person traveling upon the highway to rely on such assurance, to his injury. After examining the facts pleaded in the case before us, we cannot say as a matter of law that the installation of the signs and signals as alleged would not constitute such an "implied invitation" and that failure to operate flasher signals when a train occupied one of the tracks, in the presence of such inplied invitation, would not, as a matter of law, constitute some negligence on the part of appellee. It occurs to us that under the allegations of the complaint, as in the Revlett case, *supra,* negligence was a question of fact for the jury.

The second issue for determination is that of proximate cause. The general rule upon this issue has been stated as follows:

> "Where the question of proximate cause is presented by demurrer or other objection to the

pleadings, it is one of law for the court if the facts alleged are susceptible of but one inference, as where the allegations of the pleadings clearly show that the proximate cause of the injury was the negligent act of a third person rather than the act of defendant, or where no facts are alleged which justify any reasonable inference that the acts or failure of defendant constitute the proximate cause of the injury; otherwise it becomes an issue of fact for the jury." 65 C. J. S., §264, p. 1188.

Under the facts before us, this issue is reduced to a question as to whether there may have been a causal connection between the negligence (implied invitation) of the railroad and appellant's injury, or whether the failure of the appellant to see that which he could see and was obliged by the law to observe was the sole proximate cause of his injury. *Pennsylvania Railroad Co.* v. *Huss, supra; C. C. C. & St. L. Ry. Co.* v. *Gillespie, supra.* The proximate cause, if any, linking appellee's negligence to appellant's injury must, under the facts alleged in the case, rest upon appellant's reliance upon appellee's "implied invitation" and false assurance that he could enter upon the tracks with safety.

The issue of proximate cause is also discussed at length in the Revlett case, *supra,* as quoted. In that case, it appeared that the injured party had been familiar with the fact of flasher signals at the crossing for many years, and that on the night of the collision the train on the crossing could not be seen through the fog. In that case the court held that, under such facts, the negligence of the railroad was properly held to be the proximate cause of the injury.

In our case, appellant was familiar with the fact of flasher signals at the crossing; that they had always flashed when appellant had observed a train across the intersection; that this particular train was obscured from appellant's view because of

the rain, the darkness of the night and the black color of the cars upon the tracks. Consistent with the opinion expressed in the Revlett case, *supra,* it would seem to be that, if the installation and operation of flasher signals constituted an "invitation" to enter upon the tracks when the flasher signals were not in operation, and, because of atmospheric and other conditions, the view of the train across the intersection was obscured to a person traveling upon the highway, which person was familiar with the fact of such signals and relied upon the false assurance of such "invitation" and drove upon said tracks at a reasonable rate of speed, keeping a lookout ahead for trains on said crossing, and that a collision and injury resulted therefrom, the proximate cause became a question of fact for the jury. The same rule would apply to the issue of contributory negligence. 65 C. J. S., §251, p. 1122.

We conclude, therefore, that the allegations of the complaint were sufficient as against demurrer.

Judgment is reversed, with instructions to overrule the demurrer to appellant's second amended complaint.

NOTE.—Reported in 116 N. E. 2d 555.