Hazel Hand, Administratrix of Estate of Vernie Lee Hand, Deceased, Appellee, v. Arnold Greathouse, Appellant.

Gen. No. 9,069.

384

Opinion filed January 17, 1938.  Rehearing denied April 5, 1938.

RALPH DEMPSEY, of Pekin, and PATRICK A. D'ARCY, for appellant.

CASSIDY & KNOBLOCK, of Peoria, for appellee.

MR. PRESIDING JUSTICE FULTON delivered the opinion of the court.

The appellee, Hazel Hand, administratrix, etc., of the estate of Vernie Lee Hand, deceased, recovered a judgment, based on the verdict of a jury, in the circuit court of Tazewell county for $4,500, together with costs, against the appellant Arnold Greathouse.  From that

judgment the appellant has perfected an appeal to this court.

The complaint, as amended, consisted of three counts; the first count charged general negligence; the second count is substantially the same as the first but also charged excessive speed on the part of the defendant; the third count charged general negligence and also a failure to give any warning of defendants approach and that he operated his truck in such a manner that it struck plaintiff's intestate with great force, thereby causing his death.

The defendant, Arnold Greathouse, being a minor filed an answer, by his guardian ad litem, demanding strict proof, denied that appellee was entitled to any relief, and averred that the injuries sustained by plaintiff's intestate and his death resulting therefrom were caused by the negligence of plaintiff's intestate at the time and place of the accident.

The evidence shows that plaintiff's intestate was a man 40 years old, and with his 18-year-old son left his home about five o'clock on the morning of December 28, 1935, to go on a hunting trip; that they picked up another boy, Leo Coggie, and then proceeded on their way; that he was driving a 1930 Roosevelt eight sedan car with Coggie sitting in front with him and his son Le Roy Hand and a dog occupying the rear seat; that they had chains on the rear wheels of the car when they left their home; that there was snow on the ground but the highway was clear. While driving in a southerly direction on U. S. highway 24 there was a cracking noise and the car stopped; that the chain had become wrapped around the brake drum of the left-rear wheel and around the rods; that the chain itself was not broken but the links were broken in it; that the son, Le Roy Hand, was given a pair of pliers by his father for the purpose of getting the chain untangled; that the son crawled under the car from the rear and did

remove said chain and placed it somewhere; that he then went to the other side of the car and started to take off the chain from the right-rear wheel; that there were about six links of the chain broken at the top of the wheel where this chain went around it and the side of the chain where the links hook was hanging down about midway between the axle and the top of the tire; that his father hollered to him out of the window of the car and then got out on the driver's side of the car and came back and got under the car himself in order to remove the chain from the right-rear wheel; that his father, plaintiff's intestate, crawled under the car on his left side and most of his body was under the car off the pavement and that he was facing west.

All of the foregoing facts are testified to by Le Roy Hand, the son of plaintiff's intestate, and are not disputed. He also testified to further facts, some of which are disputed as follows: that when the wheel became locked the wheels began to skid and his dad jerked the car half way off the road where it stopped of its own accord; that the right wheels of the car were then both off the concrete on the west side or the right shoulder and the left wheels on the concrete; that the pavement was 18 feet wide and that the car was two and one-half feet on the pavement at the west edge of the concrete; that the snow had been scraped off the pavement and piled on the west shoulder and where the car stopped the shoulder was clear of snow for about eight inches; that the distance from the west edge of the concrete to a ditch was about five feet; that the right wheels of the car were in the snow which was about 18 inches deep; that while his father was in the position above described attempting to remove the chain from the right wheel he, the son, was standing at the right-rear wheel of the car facing in a southwesterly direction watching his father; that after his father got under the car, another car passed on U. S. route 24, proceeding in a northerly direction; that he

saw defendant's truck coming south; that the defendant's truck and the northbound car passed each other about 100 feet north of the rear of the Hand car; that just afterwards the defendant's truck swerved a little to the right and hit the right-rear side of the Hand automobile; that defendant gave no warning of his approach and was traveling at about 35 or 40 miles per hour; that the headlights of defendant's truck were lighted and the taillight of the Hand car was also lighted; that the two right wheels of the defendant's truck were off the pavement and the front end of the truck hit the rear end of the Hand car which under the impact moved off down the road about 150 feet and then into the ditch on the east side of the highway through a fence and into an adjoining field; that the truck stopped about 15 feet south from the point of collision. The accident happened about 6:20 to 6:30 in the morning. The son further testified that the weather was clear and that he could see objects clearly for a distance of about 300 feet.

The facts most seriously in dispute were the visibility, the depth of the snow on the shoulder, the position of the cars, the distance north of the Hand car, where defendant's truck passed the northbound car, and the speed at which defendant was driving.

The judgment in this case cannot be sustained unless it is affirmatively shown that plaintiff's intestate was in the exercise of due care for his own safety. At the time of this accident there was in full force and effect a provision of our statute, § 185, ch. 95½, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 85.217], as follows: (a) "Upon any highway outside of a business, residence or suburban district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of

at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway.''

(c) ''This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a public highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position.''

It has been held by our courts that this prohibition does not apply where the exigencies of the situation compel a car to stop on the pavement. *Frochter v. Arenholz,* 242 Ill. App. 93; *Sugru v. Highland Park Yellow Cab Co.,* 251 Ill. App. 99. The exigencies which will excuse a person from leaving a car on the public highway in violation of the statute are those which give no choice to the driver about leaving his car in that position. Instances of such exigencies are an accidental break in machinery, a failure in the mechanism or parts peculiar to the car, a sudden blocking of the highway, etc. *Crawford v. Cahalan,* 259 Ill. App. 14.

In this case there is no such emergency proven. Conceding that the Hand car was stopped by the locking of the chain around the left-rear wheel and the brake rods, there is no testimony to show that the car could not be moved after the son had removed that chain, gotten out from under the car before plaintiff's intestate had attempted to crawl under the car and remove the chain from the right-rear wheel. Indeed, the fact that by reason of the impact the car moved easily down the highway 150 feet then over an embankment and into a field without overturning shows conclusively that the car could have been moved. There was no positive testimony that the snow on the shoulder would

prevent such action by the decedent. Although he had his son and another boy along, no attempt was made to warn approaching cars of their difficulty.

The proof does not sustain the burden placed upon the appellee to show that her intestate was in the exercise of due care and caution for his own safety just prior to and at the time of the collision, and for this reason the judgment of the circuit court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*