### EBERHART v. ABSHIRE.

### No. 8902.

Circuit Court of Appeals, Seventh Circuit.

Oct. 31, 1946.

George R. Jeffrey, of Indianapolis, Ind., for appellant.

Charles A. Lowe, of Lawrenceburg, Ind., and Clinton H. Givan, of Indianapolis, Ind., for appellee.

Before KERNER and MINTON, Circuit Judges, and BRIGGLE, District Judge.

KERNER, Circuit Judge.

This is a personal injury case resulting from an automobile collision. The jury returned a verdict for the plaintiff upon which a judgment was entered against defendant and Harley May, who, while a defendant in the District Court, has not utilized his privilege of appeal here. Reversal is urged only on two grounds: that the trial judge erred in his charge to the jury, and that the alleged negligent conduct of Abshire was not the proximate cause of the plaintiff's injury.

The facts: On July 21, 1943, at about 1:00 p. m., Madge Givan was standing beside U. S. Highway 50 preparatory to taking a bus to the city of Lawrenceburg. She was stationed at a point where buses regularly stopped upon signal to receive passengers. The weather was clear and the visibility was unobstructed for about one-quarter of a mile. At the site of the accident U. S. Highway 50 ran in an easterly and westerly direction. It was a four lane highway with a dividing strip four feet in width which was raised approximately four inches and which bisected the highway. This strip was continuously raised except at openings for passage from one side of the highway to the other. Each lane of traffic was 10 feet wide and the two lanes on either side of the center strip at the time of the accident were well marked by a black dividing line. The south side of the highway, or the side where the collision occurred, was marked by a guard rail or barrier consisting of a strip of metal fastened to posts, approximately 20 inches high. The posts were set about 16 feet apart and the barrier was continuous except where openings were left for public or private drive-ways. The barrier was approximately five feet and eight inches south of the outer cement lane of the east bound traffic. The unpaved space between the pavement and the barrier was practically level (from the photographs in evidence this portion appears to run to wild grass common to highways outside city limits).

While Madge Givan was waiting for the bus, defendant Abshire drove his automobile from the general direction of the west, headed east, and stopped it just west of the plaintiff. There is a dispute as to how far the Abshire automobile extended onto the outer lane of the eastbound traffic but it is stipulated that the left wheels were on the cement. Abshire was waiting to pick up some children who were coming down a private road northwest of his automobile. He remained inside the standing automobile and had been there for a period of 5 to 10 minutes when a truck operated by defendant May approached from behind and headed in the same direction as the Abshire car faced. While there is a disagreement as to the rate of speed of the truck, it is established that it struck the Abshire car on its rear left side with such force that the impact pushed Abshire's automobile forward in such a manner that the front of the car struck the plaintiff and injured her so severely that she later was forced to submit to an amputation of the right leg. After the collision the truck continued forward and plowed through the barrier to the south of the highway. During the pendency of this appeal her death has been suggested and the cause has proceeded in the name of the administrator of her estate.

The defendant contends that the District Court's interpretation of the applicable Indiana statute regarding stopping an automobile on the highway, § 47-2120, Burns' Indiana Stat. Ann. 1933, was incorrect, and that such an interpretation when incorporated in the court's instructions to the jury was clearly erroneous. The statute states:

"(a) Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event, a sufficient unobstructed width of the roadway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle shall be available from a distance of two hundred [200] feet in each direction upon such highway.

"(b) This section shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such man-

ner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

The jury was instructed that: "Regardless of whether or not it was on the pavement entirely, or only partially, it was in violation of a certain statute of the State of Indiana unless it was not practicable to park at some other place." Defendant argues that whether he had violated the statute was a factual question to be submitted to the jury, and that stopping an automobile on the pavement, either partially or entirely, does not necessarily constitute a violation of law.

While each case must be considered separately and according to its own circumstances, nevertheless the statute remains as the gauge to be applied to each factual situation. Here the time was 1 p. m., the weather was clear and visibility unlimited, the pavement was dry, and there was sufficient room for an eastbound vehicle to pass the defendant's automobile. But at the point in question there was a slight curve in the highway. In addition there was a guard rail or barrier less than six feet from the southernmost paved portion of the highway which prevented an automobile of normal width from being driven completely off the highway. The width of Abshire's automobile was approximately six feet and it is conceded that he did not have it placed against the barrier. Abshire could have moved forward on the highway some 30 to 40 feet to a point where the barrier ended, where a private driveway ran into the highway, and driven completely off the highway. He failed to do this, because, as he explained it, he had been stopping at this particular spot on and off for eight years as it was the most convenient for him and his neighboring child passengers.

Against these facts, the statutory provision prohibiting stopping on the highway seems to remain adamant. The cogency for the non-applicability of the principal provision of the statute turns upon the phrase that no person shall stop upon the highway "when it is practicable to stop * * * off such part of said highway." Practicable, the key word, is defined in Webster's New International Dictionary, Second Edition, 1942, as "capable of being put into practice, done, or accomplished."

Defendant, pointing to the language following the phrase "but in every event, a sufficient unobstructed width of the roadway opposite a standing vehicle shall be left * * * and a clear view of such stopped vehicle shall be available from a distance of two hundred [200] feet in each direction upon such highway," argues that to get completely off the highway where he had stopped could not be done due to the barrier and, therefore, was impracticable. He asserts that the legislature anticipated such a condition as occurred here, and that it not being practicable to stop the car entirely off the highway, he observed and complied with the conditions quoted immediately above and, therefore, did not violate the statute. With this we cannot agree. The defendant could have stopped entirely off the paved portion by merely driving forward 40 feet. He did not because to do so would inconvenience himself and his prospective passengers.

The statute involved is a traffic act and therefore, a safety measure. It was designed to protect the public generally and not one or a few persons' convenience. Safety statutes must be liberally construed for they are regulations which people at large have a direct interest in seeing enforced and thereby do not come within the category of penal statutes. Doering v. Walters, 80 Ind.App. 194, 140 N.E. 74. True it is, that if a vehicle is disabled the driver is exempt under the terms of subparagraph (b) of the statute, but it does not follow that if a driver voluntarily stops at a place where it is impossible to get the automobile entirely off the highway he has not violated the terms of the statute. If the statute does not specifically say that a person must drive on until he reaches a place where he can park entirely off the pavement, as the defendant argues, it likewise does not incorporate the defendant's theory that he was not violating the statute by stopping partially on the pavement and leaving sufficient roadway to pass and a clear view of his parked automobile for 200 feet. These qualifying conditions of unobstructed passage and a sufficiently

clear view would seem to apply just to natural conditions such as no berm or a soft shoulder too weak to support the weight of an automobile. The State created barrier erected at a curve which prevented persons from driving off the paved portion entirely was purposeful, and designed to prevent all but emergency cases from stopping.

 The rule is too well settled to require the citation of authorities for its support, that when one State adopts the statute of another State, which has a judicial construction in that State, such construction is presumed to have been adopted with the statute. The statute we are considering is a national uniform traffic act, a substantial copy thereof having been adopted in many States of the Union. Illinois, which has an almost identically similar statute, adopted in 1935, Ill. Rev. Stat. 1945, c. 95½, § 185, to the statute here in question, has held through its courts that the only excuse for stopping on the pavement is an emergency or exigency which leaves no other choice. Fitzpatrick v. California & Hawaiian Sugar Ref. Corp., Ltd., 309 Ill.App. 215, 32 N.E.2d 990; Hand v. Greathouse, 294 Ill.App. 383, 13 N.E. 2d 1010, decided January 17, 1938. Indiana adopted its statute in 1939. It is clear that stopping on the highway as Abshire did was a violation of the statute, and a violation of a statute is negligence per se. Pennsylvania R. Co. v. Huss, 96 Ind.App. 71, 180 N.E. 919; Union Traction Co. of Indiana v. Wynkoop, 90 Ind.App. 331, 154 N.E. 40. The court did not err in the instructions to the jury.

Defendant's second point is that granting he left his automobile standing partially on the highway in violation of the law, the presence of his automobile merely created a condition which was not the proximate cause of the collision or of the injury to the plaintiff. He asserts that his parked automobile was too remote to be a contributing cause of the injuries to plaintiff, and that the intervention of May driving the truck was the sole proximate cause of plaintiff's injuries.

 Proximate cause of an injury is defined by the Indiana courts as " 'the act that immediately causes, or fails to prevent, an injury that might reasonably have been anticipated would result from the negligent act or omission charged, and without which such injury would not have occurred. The test is to be found in the probably injurious consequences that were to be anticipated, and not in the number of subsequent events or agencies that might arise to bring about such consequences.' " Cincinnati, H. & D. Ry. v. Armuth, 180 Ind. 673, 677, 103 N.E. 738, 740; Pennsylvania R. Co. v. Huss, supra. While defendant does not quarrel with this rule of law, he argues that there was no causal connection between the parked car and the accident. It is true that if the defendant's negligence was a mere condition or remote cause of the injury suffered, the defendant is not liable, Moran v. Poledor, 84 Ind.App. 266, 151 N.E. 140, and the defendant likewise cannot be held liable if an independent intervening act which in no way was brought about or caused by any act of defendant is the immediate and direct cause of the injury. Pennsylvania R. Co. v. Huss, supra. But if the defendant by his negligence set in motion a cause which continued down to the instant of injury and without which the injury would not have occurred, the defendant is liable, even though the negligence of May contributed to bring about the injury to plaintiff. City of Indianapolis v. Willis, 208 Ind. 607, 194 N.E. 343; City of Hammond v. Jahnke, 178 Ind. 177, 99 N.E. 39.

 In our case, when defendant left his automobile standing partially on the highway, he violated the statute and was guilty of negligence per se. He was immediately put on notice of possible traffic accidents which were reasonably foreseeable as a result of his negligence, even though the manner in which they occurred might possibly seem fantastic. Defendant's negligence related just as much to plaintiff, who was standing on the berm of the highway, as it did to motorists who were driving east on the highway. The foreseeability of the type of accident which occurred in the instant case and was set in motion by the negligence of Abshire was actual and could have been anticipated. The colliding of a vehicle approaching from the rear with the automo-

bile standing partially on the highway was not at all improbable and the possibility that the moving vehicle might be a heavy truck which might strike the standing and lighter defendant's automobile and cause it to pitch forward against the plaintiff, who was properly stationed off the highway and at a signal bus stop, likewise was plausible and not improbable. While the negligence of May was possibly the primary cause of the accident, the negligence of Abshire related to plaintiff and was the producing or the direct cause of the injuries to plaintiff.

The judgment of the District Court is affirmed.